[No. E015010. Fourth Dist., Div. Two. Dec. 11, 1996.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Plaintiff and Respondent, v. CHARLES GRAVES et al., Defendants and Appellants.

## COUNSEL

Jeffrey C. Stearns for Defendants and Appellants.

Saxon, Brewer, Solomon & Kincannon, Solomon, Grindle, Silverman & Spinella, Richard A. Solomon, R. Lynn Reavely, Jan Roethe, Ullar Vitsut and Linda Reed for Plaintiff and Respondent.

## OPINION

**WARD, J.**—The trial court granted plaintiff Bank of America National Trust and Savings Association's motion for summary judgment and awarded it $61,530.32. Defendants, Mr. and Mrs. Graves (the Graveses), appeal. We affirm the judgment.

## Facts and Statement of the Case

In 1991, the Graveses opened a CustomLine equity account with Bank of America National Trust and Savings Association (Bank). Loans from the account were secured by a second deed of trust against the debtors' home in Lake Arrowhead. The Bank lent $49,500 to the Graveses.

On July 15, 1992, the Graveses defaulted on the loan by failing to make the payment due on that date, and they made no further payments. On October 28, 1992, the Bank recorded a notice of default and election to sell under the deed of trust. The Bank set its trustee's sale for March 17, 1993.

The Bank learned that Federal Home Loan Mortgage Corporation (FHLMC), the holder of the first deed of trust on the property, had also instituted foreclosure proceedings. The Bank therefore postponed its trustee's sale until May 17, 1993. FHLMC completed its trustee's sale on April 15, 1993, and it was the highest bidder at the sale. The sale price was the amount owing to FHLMC. FHLMC's trustee's deed upon sale was recorded and FHLMC became the owner of the property.

The Bank then sued the Graveses for amounts due on an account stated. The Graveses defended on the ground the Bank had failed to exhaust its security under Code of Civil Procedure section 726 (the "one form of action" rule).[1]

The trial court found for the Bank, stating: "A lender whose interest is secured by a junior priority deed of trust against real property is not barred by the provisions of the 'one action rule' of California Code of Civil Procedure § 726 from suing its borrowers directly on the underlying obligation, where the junior lienholder's security was extinguished by the foreclosure of a senior lien. It matters not that the junior lienholder commences its foreclosure proceedings prior to the senior lienholder's by recording a Notice of Default and Notice of Trustee's Sale, and then continues its foreclosure sale to allow the senior to complete its foreclosure sale first, extinguishing the junior lien."

The issue on appeal is whether the trial court was correct in this conclusion of law. We hold that it was.[2]

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The Bank argues that the Graveses' failure to file a separate statement in opposition to the Bank's motion for summary judgment, and the Graveses' late filing of the opposition papers,

## DISCUSSION

### I. *A Sold-out Junior Lienholder May Enforce the Underlying Debt.*

■ In California, a creditor secured by a trust deed on real property must rely on the security before enforcing the underlying debt. (§§ 580a, 725a, 726.) Even if the security is insufficient, the antideficiency statutes (§§ 580a, 580b, 580d) may limit or bar a judgment against the debtor for a deficiency. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 38-39 [27 Cal.Rptr. 873, 378 P.2d 97].)[3]

However, when the value of the security has been lost through no fault of the creditor, the creditor may bring a personal action on the debt. (*Hibernia S. & L. Soc.* v. *Thornton* (1895) 109 Cal. 427, 429 [42 P 447].) The court in *Brown* v. *Jensen* (1953) 41 Cal.2d 193, 195 [259 P.2d 425] explained, "It has been held under [section 726] that where the security has been exhausted or rendered valueless through no fault of the mortgagee, or beneficiary under a trust deed, an action may be brought on the debt on the theory that the limitation to the single action of foreclosure refers to the time the action is brought rather than when the trust deed was made, and that if the security is lost or has become valueless at the time the action is commenced, the debt is no longer secured."

■ Here, the Bank contends it was entitled to proceed directly against the debtors because, through no fault of its own, it was a sold-out junior lienor. Accordingly, it argues that the defenses raised by the debtors, based on the 'one form of action rule' (§ 726) and the antideficiency statutes (§§ 580a, 580b, 580d) do not apply. The Graveses contend the Bank was not a sold-out junior lienor because its own action in postponing its trustee's sale deprived it of that status.

■ The term "sold-out junior lienor" refers to the situation in which a senior lienholder forecloses its lien, eliminating the junior lienor's security interest. "A senior foreclosure sale conveys the property free of all junior

---

provide a separate basis for granting the motion. (§ 437c, subd. (b).) While this is true, the trial court did not exercise its discretion to grant the motion on procedural grounds.

[3]The antideficiency statutes are to be construed liberally to effectuate the legislative purposes underlying them, including the policies " '(1) to prevent a multiplicity of actions, (2) to prevent an overvaluation of the security, (3) to prevent the aggravation of an economic recession which would result if creditors lost their property and were also burdened with personal liability, and (4) to prevent the creditor from making an unreasonably low bid at the foreclosure sale, acquire the asset below its value, and also recover a personal judgment against the debtor.' [Citations.]" (*Torrey Pines Bank* v. *Hoffman* (1991) 231 Cal.App.3d 308, 318 [282 Cal.Rptr. 354]; see also *Evans* v. *California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 551 [33 Cal.Rptr.2d 646].)

liens . . . . Thus, the junior no longer has a lien on the property, and the security has been entirely destroyed. A sold-out junior thus holds security that has 'become valueless' and is permitted to sue directly on the note." (Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 4.8, pp. 193-194.)

In the leading case of *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, Chief Justice Traynor held, "The 'one form of action' rule of section 726 does not apply to a sold-out junior lienor [citations], nor does the three-months limitation of section 580a. [Citations.] There is no reason to compel a junior lienor to go through foreclosure and sale when there is nothing left to sell. . . . [¶] The fair-value limitations of sections 580a and 726 likewise do not apply to a junior lienor, . . . whose security has been rendered valueless by a senior sale. . . . [¶] The purpose of the fair-value limitations in sections 580a and 726 does not extend to sold-out junior lienors." (*Id.* at pp. 38-40.) Justice Traynor further explained: "The position of a junior lienor whose security is lost through a senior sale is different from that of a selling senior lienor. A selling senior can make certain that the security brings an amount equal to his claim against the debtor or the fair market value, whichever is less, simply by bidding in for that amount. He need not invest any additional funds. The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with the junior lienor who, unlike the selling senior, might otherwise end up with nothing." (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at p. 41.)

The leading texts on real property set forth the same principles. "The prohibition against a deficiency judgment does not apply to the beneficiary of a junior deed of trust whose security has been rendered valueless by a foreclosure sale of the property under a senior encumbrance. After the security has been lost by the foreclosure sale of the senior lien, the junior lienor can sue the debtor directly on the promissory note, which is then considered unsecured." (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:156, p. 531; see also 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 159, pp. 658-659.)

Another commentator has stated the principles as follows: "A nonselling junior creditor whose security is destroyed when the senior forecloses is permitted to bring an action on the note directly against the trustor, because the security-first aspect of the one-action rule does not apply in this situation. . . . [¶] The California Supreme Court has held that a nonselling

junior creditor is not barred from bringing an action directly on the note merely because the senior foreclosure was conducted under the senior power of sale rather than by court action. [Citation.] The selling senior is barred from obtaining a deficiency judgment by CCP § 580d, but the nonselling junior is not. [Citation.] The rationale stated in *Roseleaf* is that the junior should not be penalized for a choice (concerning the method of foreclosure) that the junior did not make. . . . [¶] . . . [¶] The California Supreme Court has held that a nonselling junior creditor is not bound by the fair-value provisions of CCP §§ 580a and 726 [citation]. [Citation.] The court's treatment of the fair-value provisions is thus analogous to its treatment of CCP § 580d, *i.e.*, that neither restriction applies to junior deeds of trust following senior foreclosures." (Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, §§ 4.31 to 4.33, pp. 213-214.)

Professor John R. Hetland summarizes the rule: "[T]he sold-out non-purchase-money junior is free to pursue any remedy on the note without regard to the one-form-of-action limitation (CCP §726), fair market value deficiency limitation (CCP §§726, 580a), and nonjudicial sale deficiency prohibitions (CCP §580d)." (Hetland, Secured Real Estate Transactions (Cont.Ed.Bar 1974) § 9.29, p. 219.)[4]

II. *No Action or Negligence of the Bank Deprived It of the Status of a Sold-out Junior Lienholder.*

The Graveses, citing *Hibernia S. & L. Soc.* v. *Thornton, supra,* 109 Cal. 427 contend that the Bank is not a sold-out junior lienor because its own action in postponing its trustee's sale deprived it of that status. In *Hibernia,* the court said: "It may be that, if the mortgagor's title to the land has become extinguished subsequent to the making of the mortgage, by title paramount, or if the mortgaged property has been destroyed, or has ceased to exist [citation], the mortgagee need not go through the idle form of bringing an action for foreclosure before he can have a judgment on the note; but when the mortgagee, *by his own act or neglect,* deprives himself of the right to foreclose the mortgage, he at the same time deprives himself of the right to an action upon the note. . . . 'He is not authorized to waive the security and bring an action on the indebtedness' [citation]; and whether he release the security by some affirmative act or by his neglect is immaterial." (*Id.* at p. 429, italics added.) The act or neglect which the court referred to in *Hibernia* was the creditor's failure to file a claim with the estate of a deceased debtor. (*Ibid.*) There is no such failure to perform some legally required act under the facts of this case.

---

[4]This volume, cited by the Bank, is an early, perhaps superseded edition, but the principles remain in force.

In cases applying the *Hibernia* rule, the courts have looked to whether some negligence or affirmative action on the part of the creditor led to the loss of the security. For example, in *Pacific Valley Bank* v. *Schwenke* (1987) 189 Cal.App.3d 134 [234 Cal.Rptr. 298], the court held the comaker of a promissory note was entitled to rely on a section 726 defense even though he was not a party to the deed of trust. The creditor, without the consent of the debtor, released the security through a separate transaction with the debtor's partner. The court in *Pacific Valley Bank* explained, "Although an exception to the one-action rule has developed in cases where foreclosure would be an idle act because the security has been destroyed or has become worthless [citations], the exception does not apply if the beneficiary himself is responsible for the loss of security. Thus a creditor is not allowed to circumvent the statute by divesting himself of his security without the consent of the debtor. [Citation.] If he does so he has waived his right to proceed on the note." (189 Cal.App.3d at p. 140.)

In *Simon* v. *Superior Court* (1992) 4 Cal.App.4th 63 [5 Cal.Rptr.2d 428], a bank held both the first and second trust deeds on the property. Having foreclosed on the first, the bank contended it was a sold-out junior lienor on the second and could thus sue directly. The court held that the bank was not a third party sold-out junior lienholder because it was fully able to protect its secured position. Because the action of the bank in foreclosing on the first trust deed eliminated the security of the second trust deed, the court held that a deficiency action was barred by section 580d. The *Simon* court noted, "Bank was not a third party sold-out junior lienholder as was the case in *Roseleaf.* As the holder of both the first and second liens, Bank was fully able to protect its secured position. It was not required to protect its junior lien from its own foreclosure of the senior lien by the investment of additional funds. Its position of dual lienholder eliminated any possibility that Bank, after foreclosure and sale of the liened property under its first lien, might end up with no interest in the secured property, the principal rationale of the court's decision in *Roseleaf.*" (*Simon* v. *Superior Court*, *supra*, 4 Cal.App.4th at p. 72.)

Here, the Bank did not release its security through a separate transaction as in *Schwenke,* nor was it the holder of both first and second liens as in *Simon.* The Graveses cite us to no cases applying the *Hibernia* rule which involved the foreclosure by a senior lienholder when a junior lienholder commenced, but did not complete, its own foreclosure action. Mere commencement of nonjudicial foreclosure proceedings was not an election of remedy. (*Carpenter* v. *Title Ins. & Trust Co.* (1945) 71 Cal.App.2d 593, 596 [163 P.2d 73].) In *Griffin* v. *Compere* (1952) 114 Cal.App.2d 246, 247 [250 P.2d 1], for instance, the court held that the fact a creditor had brought a

prior foreclosure action and then dismissed it did not constitute an election of remedies that would preclude a later private sale and suit for the deficiency. We conclude the cases applying the *Hibernia* principle simply do not apply to the facts at hand.

### III. *Public Policy Requires That a Junior Lienor Be Allowed to Pursue Its Options When the Borrowers Default.*

The Graveses borrowed money from the Bank, giving the obvious promise to repay. The Bank, to secure its position, asked for security and accepted a second trust deed position. In doing so, the Bank took significant risks: It not only secured its loan behind the senior encumbrance but also it subjected itself to the protections afforded debtors in the event of default in the payments.

After the Graveses defaulted on their loan, the Bank had only two options: 1) it could foreclose on its junior priority deed of trust against the Graveses' property, thereafter investing additional funds to bring the senior lien current and to keep it current; or 2) it could postpone its foreclosure sale and allow itself to be foreclosed out. Public policy mandates that a junior lienholder be allowed to make a business decision to pursue either of these options.

The Graveses argue, however, that the Bank's "nonjudicial foreclosure action would not have been extinguished by the nonjudicial foreclosure of the first deed of trust by FHLMC had Respondent BANK completed and not postponed its trustee's sale . . . ." The Graveses contend that, once the Bank commenced its foreclosure action, it was obliged to complete it. The Bank, according to the Graveses, had no alternative in that situation except to assume the senior obligation, or pay it off, in order to protect its junior lien.

But the logical extension of the Graveses' position goes much further. If the junior lienholder must complete the proceedings, why would the junior lienholder not also be required to commence the proceedings immediately upon default of its debtor? Otherwise, the lienholder could be accused of sleeping upon its rights and "losing" its lien by allowing the senior lienholder to commence its foreclosure. Thus, under the Graveses' position, the *Hibernia* principle would apply to all second lienholders, whether or not they had commenced foreclosure proceedings.

The rule proposed by the Graveses would also limit the ability of banks to negotiate with equity-loan customers. Under the Graveses' proposed rule, banks would have no bargaining room when the debtors defaulted in payment. The Bank's only recourse would be to start and, without interruption,

complete foreclosure, lest their hesitancy cause them to lose their secured position. If they delayed the process to work things out with the debtor, they could be found to have slept on their rights and therefore to have lost their security.

And, worse yet, *in all cases*, the holder of the second lien would be obliged to pay or assume the first lien position. A requirement that the junior lienholder put up the money on the senior lien would be inequitable. (See *Roseleaf Corp.* v. *Chierighino, supra*, 57 Cal.2d at p. 41 [stating that a junior lienor is in no better position than the debtor to protect himself, in that both would have to invest additional funds to redeem or buy in at a senior lienor's sale].)

The practical effect of a rule requiring a lender to assume the first position would be to significantly alter the practices of banks in extending equity loans. Banks would, we believe, refuse to extend equity line credit except in the most favorable of lien circumstances. A rule which would require the bank to always take over the first lien presumably would lead to higher rates of interest to cover the risk. Such a rule would lead to the tightening of credit in a banking area which has grown in acceptance in recent years. Borrowers would be forced, instead, to look for unsecured loans which, logic tells us, would be less available.

Finally, the rule sought by the Graveses would create a double standard for lenders in the equity line business. Only those with funds to finance the assumption of the senior lien could run the risk. Others simply could not, prudently, make such loans.

These practical considerations lead us to conclude that the rule proposed by the Graveses would be both unworkable and inequitable.

## DISPOSITION

The trial court properly applied the law in this case. The summary judgment was appropriate. The judgment is affirmed.

McDaniel J.,* concurred.

**HOLLENHORST, Acting P. J.**—I dissent. The majority correctly states the dispositive test of *Hibernia S. & L. Soc.* v. *Thornton* (1895) 109 Cal. 427 [42 P. 447], but inexplicably fails to apply it.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In *Thornton*, our Supreme Court said: "[W]*hen the mortgagee, by his own act or neglect, deprives himself of the right to foreclose the mortgage, he at the same time deprives himself of the right to an action upon the note.*" (*Hibernia S. & L. Soc.* v. *Thornton, supra,* 109 Cal. 427, 429, italics added.)

The majority also cites the more recent statement of the rule in *Pacific Valley Bank* v. *Schwenke* (1987) 189 Cal.App.3d 134 [234 Cal.Rptr. 298]: "Although an exception to the one-action rule [of Code of Civil Procedure section 726] has developed in cases where foreclosure would be an idle act because the security has been destroyed or has become worthless [citations], *the exception does not apply if the beneficiary himself is responsible for the loss of security. Thus, a creditor is not allowed to circumvent the statute by divesting himself of his security without the consent of the debtor.*" (*Pacific Valley Bank, supra,* at p. 140, italics added.)

In other words, the one action rule of Code of Civil Procedure section 726 prevents the secured creditor from suing on the underlying nonpurchase money promissory note when the secured creditor is not a bona fide sold-out junior lienor.

The one action rule is thus the general rule,[1] and the exception is a case in which "foreclosure would be an idle act because the security has been destroyed or has become worthless . . . ." (*Pacific Valley Bank* v. *Schwenke, supra,* 189 Cal.App.3d 134, 140.) The exception is inapplicable if the "beneficiary himself is responsible for the loss of security." (*Ibid.*)

The majority lessens the protection afforded consumers by the one action rule by holding that Bank of America National Trust and Savings Association is a bona fide sold out junior lienor. *Although the bank was a sold-out junior lienor, it did not achieve that status without fault because the bank clearly took affirmative action which resulted in the loss of its security: it intentionally postponed its foreclosure sale so that the senior lienor could foreclose first.* This action by the bank rendered its security valueless. The exception to the one action rule was therefore inapplicable and the one-action rule bars the bank from pursuing the debtors individually.

---

[1]*Pacific Valley Bank* succinctly states the one action rule: "The law of this state is that '[t]here can be but one form of action for the recovery of any debt . . . secured by mortgage upon real property . . .'; that form of action is foreclosure of the security. (Code Civ. Proc., § 726.) If the beneficiary seeks a deficiency judgment in excess of the value of the security, he is further limited to a foreclosure by judicial process rather than by operation of the power of sale under the deed of trust. (Code Civ. Proc., § 580b.) The existence of the security thus denies the secured creditor the right to bring an independent cause of action on the underlying promissory note." (*Pacific Valley Bank* v. *Schwenke, supra,* 189 Cal.App.3d 134, 140.)

The majority nevertheless refuses to apply the one action rule on "public policy" grounds. While not stating what public policy it is trying to further by its decision, the court concludes that "[t]hese practical considerations lead us to conclude that the rule proposed by the Graveses would be both unworkable and inequitable." (Maj. opn., *ante*, at p. 616.)

The applicable public policy has been fully and clearly stated by the Legislature in its enactment of the one action rule and by our Supreme Court in *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97] and *Brown* v. *Jensen* (1953) 41 Cal.2d 193 [259 P.2d 425]. For example, in *Roseleaf*, Justice Traynor explained that, as between the bona fide sold-out junior lienor and the debtor, equitable considerations favor the junior lienor: "The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with the junior lienor who, unlike the selling senior, might otherwise end up with nothing." (*Roseleaf Corp.*, *supra*, at p. 41.) By basing its opinion on unspecified "equitable considerations," the majority disregards the statements of both the Legislature and the Supreme Court, and embarks on a rudderless course of its own to unknown destinations.

The "practical considerations" cited by the majority consist of a parade of horribles that are based on the premise that a contrary holding would require lenders "to start and, without interruption, complete foreclosure, lest their hesitancy cause them to lose their secured position." (Maj. opn., *ante*, at pp. 615-616.)

I disagree. A contrary holding would merely follow the well-established principle that the lender may not *intentionally* take affirmative action to lose its security in order to assert that it has become a bona fide sold-out junior lienor. (*Pacific Valley Bank* v. *Schwenke, supra*, 189 Cal.App.3d 134, 140.) Nothing in a contrary holding would require the bank to foreclose, or prevent it from doing so. Once the foreclosure process began, nothing in a contrary holding would require or prevent it from continuing or postponing the foreclosure, nor would anything in a contrary holding require the bank to complete or not complete the foreclosure process. *The only thing a contrary holding would do would be to prevent the bank from taking affirmative action with the intent to circumvent the one action rule.* In other words, a contrary holding would limit only lenders who attempted to manipulate and avoid the one action rule. It would not affect a bona fide sold-out junior lienor.

The proper "public policy" is that stated in the statutes. The majority should apply it rather than embarking on its own nebulous interpretation which ignores the purposes of the one action rule. I would reverse the judgment.

Appellants' petition for review by the Supreme Court was denied March 19, 1997. Baxter, J., and Chin, J., did not participate therein.