[No. A086348. First Dist., Div. Three. Jan. 29, 2001.]

C.J.A. CORPORATION, Cross-complainant and Respondent, v.
TRANS-ACTION FINANCIAL CORPORATION et al., Cross-defendants
and Appellants.

**COUNSEL**

Roger Bernhardt and Kyle G. Bach for Cross-defendants and Appellants.

Malat & Malat, Melvin H. Malat and Morris S. Getzels for Cross-complainant and Respondent.

## OPINION

**WALKER, J.**—Trans-Action Financial Corporation, Robert Bisno, and James Coxeter appeal from the trial court's order modifying a prior judgment for judicial foreclosure to allow respondent C.J.A. Corporation (CJA) to instead obtain a money judgment against appellants. We hold that because respondent unequivocally elected to proceed against appellants by way of judicial foreclosure, it was estopped from seeking to change its remedy after judgment. We further hold that the trial court exceeded its jurisdiction in modifying the judgment based upon matters that were never before it at trial. We therefore reverse and remand to the trial court with directions that it vacate its order modifying the judgment and reinstate the prior judgment of judicial foreclosure.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellants are the general partners of two limited partnerships, Trans-Action Commercial Investors, Ltd. and Trans-Action Commercial Mortgage Investors, Ltd. In 1985, the limited partnerships acquired property known as the Berkeley Conference Center (hereinafter, the property), subject to a first deed of trust given to secure a loan on the property. In 1993, the note and first deed of trust were assigned to the Bank of America. In 1990, the limited partnerships obtained another loan for $365,000 from First Republic Thrift & Loan (First Republic), secured by a second deed of trust on the property. In 1993, the limited partnerships defaulted on repayment of the Bank of America loan, causing Bank of America to file an action for judicial foreclosure against several entities, including the limited partnerships and First Republic, the holder of the second deed of trust. In turn, First Republic cross-complained against the limited partnerships and their general partners (appellants) for breach of the note and second deed of trust and for judicial foreclosure. Bank of America subsequently dismissed its complaint, leaving only First Republic's cross-complaint to be resolved.

In 1996, First Republic assigned its loan to CJA, which pursued the cross-complaint for judicial foreclosure to trial, ultimately obtaining a judgment of judicial foreclosure pursuant to Code of Civil Procedure section 726. The trial court judgment, entered June 9, 1997, ordered that the property "be sold in the manner described by law by the levying officer . . . . A

deficiency judgment not being waived or prohibited in this action, the Real Property is to be sold subject to the right of redemption as provided in . . . the Code of Civil Procedure." In addition, the court retained jurisdiction "in order that C.J.A. Corporation or its successors and assigns may apply for a deficiency judgment, after the foreclosure sale of the Real Property, in accordance with the provisions of Code of Civil Procedure section 726, et. seq., *and in order that the Court may determine the amount of the deficiency, if any, and render a money judgment therefore in favor of C.J.A. Corporation . . . .*" (Italics added.)

On June 25, 1997, the limited partnerships filed for bankruptcy. The parties thereafter stipulated to a relief from the bankruptcy stay to allow CJA to proceed with the enforcement of its judgment against the limited partnerships for judicial foreclosure. The United States Bankruptcy Court approved the stipulation and granted the relief from stay on February 12, 1998. Having obtained stay relief, CJA filed a motion in the trial court for an award of contractual attorney fees as prevailing parties in the judicial foreclosure action. On April 14, 1998, the court awarded CJA attorney fees and costs in the amount of $101,121.54.

Meanwhile, the senior lienholder,[1] represented by Attorney Melvin H. Malat, had filed a second action for judicial foreclosure on the first deed of trust, which went to trial in May 1998. After evidence was presented and the matter was taken under submission, Malat asked the trial court not to issue a decision. The Revere action was thereafter dismissed. On July 20, 1998, Revere's attorney, Malat, substituted in as attorney of record for junior lienholder CJA. Subsequently Malat, now acting as trustee under the first deed of trust, noticed a trustee's sale of the property. The trustee's sale was held in September 1998, with Revere purchasing the property. The trustee's deed upon sale, executed on September 10, 1998 by Malat as trustee, indicated that "[t]he amount of the unpaid debt [secured by the first deed of trust] was $1,460,195.06."

After Revere purchased the property at the trustee's sale held under the first deed of trust, Malat filed a motion on behalf of CJA, seeking to convert CJA's 15-month-old judgment of judicial foreclosure, which it had never acted upon, from a judgment ordering foreclosure by sale with a possible monetary deficiency into a money judgment for the entire amount of the debt. CJA asserted the modification of the judgment was appropriate because, as a result of the sale of the security at the trustee's sale, CJA was

---

[1]In September 1996, Bank of America assigned the loan to Revere Financial Corporation (Revere). Revere filed the second action for judicial foreclosure on the first deed of trust.

now a sold-out junior lienholder. After hearing, the trial court granted CJA's motion and ordered that the previously entered judgment of judicial foreclosure and order of sale be converted to a money judgment against the limited partnerships and appellants in the amount owing under the note in the sum of $702,310.54, plus attorney fees and interest. Appellants timely filed a motion for new trial, which was denied. This appeal followed.

DISCUSSION

■ Appellants seek reversal of the trial court order converting the judgment of judicial foreclosure to a money judgment on the ground there were essential factual issues relating to CJA's sold-out junior lienholder claim that were never presented to or resolved by the trial court. In addition, appellants maintain that CJA's unequivocal election to pursue judicial foreclosure under the second deed of trust precluded it from seeking to change remedies after obtaining a judgment of judicial foreclosure. We hold that the record clearly establishes that CJA elected its remedy of judicial foreclosure, thereby barring it from seeking to change remedies after judgment. We further hold that unresolved factual issues did exist, preventing the trial court from deciding that CJA was a sold-out junior lienholder entitled to avoid the provisions of Code of Civil Procedure section 726. Once judgment had been entered, the trial court was without jurisdiction to consider issues that had not been before it at trial.

## I. *One Action Rule/Election of Remedy*

■ Code of Civil Procedure section 726 provides in relevant part that "(a) There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property . . . , which action shall be in accordance with the provisions of this chapter. . . . [¶] (b) The decree for the foreclosure of a mortgage or deed of trust secured by real property . . . shall declare the amount of the indebtedness or right so secured and, unless judgment for any deficiency there may be between the sale price and the amount due with costs is waived by the judgment creditor or a deficiency judgment is prohibited by Section 580b, shall determine the personal liability of any defendant for the payment of the debt secured by the mortgage or deed of trust and shall name the defendants against whom a deficiency judgment may be ordered following the proceedings prescribed in this section." This "one action rule" thus compels a secured creditor to exhaust its security in a single judicial action before obtaining a monetary deficiency judgment against the debtor. (*Ziello v. Superior Court* (1995) 36 Cal.App.4th 321, 330 [42 Cal.Rptr.2d 251].) The purpose of the one action

rule is to prevent a secured creditor from enforcing its rights by seeking recourse to more than one remedy, such as by obtaining both a money judgment on the mortgage debt and by foreclosing on the mortgage. (*In re Madigan* (Bankr. 9th Cir. 1991) 122 B.R. 103, 105-106.)

An exception to the one action rule has been recognized in those cases where the security has been lost through no fault of the creditor, rendering the pursuit of a foreclosure action an idle act. (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 48 [57 Cal.Rptr.2d 687, 924 P.2d 996]; *Bank of America v. Graves* (1996) 51 Cal.App.4th 607, 611 [59 Cal.Rptr.2d 288] (*Graves*).) Thus, in *Graves*, a junior lienholder that commenced nonjudicial foreclosure proceedings, but postponed a noticed trustee's sale to allow the senior lienholder to complete its own trustee's sale, was allowed to thereafter pursue an action against the debtors for amounts due on an account stated. (*Graves, supra,* at p. 610.) In affirming the money judgment against the debtors on appeal, the court set forth two reasons for holding that the one action rule did not bar the creditor's action: (1) the rule had no application to a sold-out junior lienholder that had lost its security through no fault of its own; and (2) the creditor's "[m]ere commencement of nonjudicial foreclosure proceedings was not an election of remedy." (*Id.* at pp. 613-614.)

 Thus, while it has been held that the mere *commencement* of a foreclosure action does not constitute an election of remedies, the question before us is whether the prosecution of a judicial foreclosure action *to judgment* constitutes an election, barring a modification of the judgment. The case of *Vlahovich v. Cruz* (1989) 213 Cal.App.3d 317 [261 Cal.Rptr. 565] is analogous to the present case and instructive to our analysis. There, the court considered whether a trust deed beneficiary who obtained a judgment for judicial foreclosure could thereafter obtain a modification of that judgment to permit a private trustee's sale. The court acknowledged a plaintiff's right to pursue inconsistent remedies *during trial,* and recognized a plaintiff " '. . . cannot be compelled to elect . . . between inconsistent remedies during the course of trial prior to judgment. However, if a plaintiff has unequivocally and knowledgeably elected to proceed on one of the remedies he is pursuing, he may be barred recourse to the other.' [Citation.] A litigant will be held to his choice of remedies if 'having full knowledge of all of the facts has elected one of two inconsistent remedies and *pursues it to judgment.* ' [Citation.]" (*Id.* at pp. 322-323, original italics.) In *Vlahovich,* the court concluded that the trust deed beneficiary had knowledgably pursued a judicial foreclosure action to judgment, thereby electing that remedy to the exclusion of all others, with the exception of obtaining a deficiency judgment. (*Id.* at p. 323.) Accordingly, the court held that the trial court had erred

in granting the creditor's motion to modify the judgment, and reversed. (*Ibid.*)

Although not express in *Vlahovich*, the court's analysis was in part an inquiry into the extent of the prejudice to the debtor caused by the creditor's belated change of remedy. "[T]he modern tendency is to explain election in terms of estoppel, i.e., to take into consideration not merely the plaintiff's manifestation of choice but also its effect on the defendant. Hence, despite a clearly manifested intention to pursue one of two inconsistent remedies, the plaintiff may thereafter seek the other remedy if the change will not work a substantial injury to the adverse party. [Citation.] But if the change will for some reason operate to the prejudice of the defendant, the plaintiff's new remedy is barred, because his 'election' has continued to the point where he is estopped to change his remedy." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 181, pp. 252-253, italics deleted.)

We consider the record before us in light of these authorities. The first factor—whether CJA knowledgeably and unequivocally pursued its judicial foreclosure action to judgment—is abundantly demonstrated in the record. The plain fact is that CJA *never*, throughout the course of litigation, suggested that it was doing anything other than prosecuting an action for judicial foreclosure. At every stage of the litigation, CJA steadfastly and unequivocally sought a judgment of judicial foreclosure, which it obtained. The cover page of its cross-complaint identified the cross-complaint as one for "foreclosure of deed of trust and for specific performance of rents and profits clause and for appointment of receiver and accounting"; its trial brief described the action as "an uncomplicated action for judicial foreclosure of a deed of trust," set forth the law of judicial foreclosure, and asked for a judgment of judicial foreclosure with a finding that appellants were personally liable *for any deficiency judgment*; and the form of judgment, prepared by CJA as prevailing party, provided for judicial foreclosure and a deficiency judgment.

The record further reveals that CJA's attempt to modify the judgment some 15 months after entry would have been prejudicial and unjust to appellants. In *Vlahovich* the court framed the injustice as follows: "In our opinion, it would be extremely unfair to permit respondent to proceed to judgment in a judicial foreclosure action—thereby preserving his right to a deficiency judgment—and then, three years later, change his course of action to gain the benefit of the inflated value of San Francisco real estate and at the same time obliterate appellant's extant right of redemption." (*Vlahovich v. Cruz, supra*, 213 Cal.App.3d at p. 323.) In the matter before us, we

perceive several ways in which CJA's belated change of remedy was equally unfair to appellants.

Most fundamentally, the eradication of the judgment of judicial foreclosure took away the rights afforded the debtors under the judgment and under Code of Civil Procedure section 726. The judgment of judicial foreclosure, as entered, granted rights to both parties. By seeking a judicial foreclosure, respondents obtained not only the right to foreclose, but also the potentially very valuable right to a deficiency judgment in the event the foreclosure sale proceeds did not fully satisfy the amount secured by the second deed of trust. As designed by statute, appellants also obtained potentially valuable rights. They were given the right to a fair value hearing and the right to redeem the property after judicial foreclosure by paying the purchaser the amount of the sale price plus interest. (Code Civ. Proc., §§ 726, subds. (b) & (e), 729.010, 729.060.) It was unfair and prejudicial to summarily eliminate the rights vested in the debtors by the judgment.

Aside from losing the rights afforded them under the judgment, appellants were prejudiced by the modification of the judgment to the extent they had expended attorney fees and costs in defending an action for judicial foreclosure. As it turned out, and as we discuss more fully below, the defense they should have been paying for involved entirely different issues, pertaining to CJA's right to avoid the one action rule.

Finally, beyond the personal detriment to appellants, under the circumstances presented, allowing respondent to modify a final judgment to obtain a completely different remedy does an injustice to the strong policy favoring finality of actions. (See *In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 81, fn. 4 [260 Cal.Rptr. 403].)

For its own tactical reasons CJA made a clear decision to proceed by way of judicial foreclosure, knowing full well that the senior lienholder could foreclose first, thereby effectively terminating its judgment rights. Once it pursued that remedy to judgment, it was estopped from changing course to the detriment of appellants. Accordingly, it was error for the trial court to modify the judgment already rendered, and we reverse.

II. *Modified Judgment Outside Issues Presented at Trial Is Extrajudicial and Invalid*

Respondent sought and obtained a modification of the judgment of judicial foreclosure, converting the judgment to a money judgment against appellants for the full amount of the note, plus interest, costs, and attorney

fees. As we have stated, *ante*, the issues raised by respondent throughout the proceedings prior to judgment pertained only to its efforts to obtain a decree of judicial foreclosure, not to any claim for a money judgment, other than a deficiency judgment allowed by law. Accordingly, respondent's only burden of proof at trial was to establish the elements of a judicial foreclosure action; correspondingly, appellants' recourse was to defend that action. Yet, respondent obtained a modified judgment that implied the trial court's resolution of factual issues in CJA's favor, without those issues ever having been litigated. A modification of a judgment that goes beyond the issues raised in the pleadings or pretrial proceedings is invalid. (*Orange County Water Dist. v. City of Colton* (1964) 226 Cal.App.2d 642, 649 [38 Cal.Rptr. 286] (*Colton*).)

In *Colton*, the trial court had entered a judgment adjudicating the litigants' prescriptive water rights, and had reserved jurisdiction to fix, from time to time, the quantity of water required for beneficial use. (*Colton, supra*, 226 Cal.App.2d at pp. 646-647.) Subsequently, the City of Colton sought modification of the judgment to obtain certain additional water rights from overlying landowners. (*Id.* at pp. 644-645.) In affirming the trial court's denial of the modification, the court held that "in the making of this motion [for modification] appellant has sought to inject into the action a new issue, involving the determination of a new and different water right than those which were before the court for determination in the action as it was brought and considered by the court at the time of trial." (*Id.* at p. 649.) Thus, "[e]ven though the court retained jurisdiction for broad purposes in connection with adjustment of such included issues as might arise subsequent to the entry of the judgment, it did not, nor could it have retained jurisdiction to pass upon new and different issues based upon after-acquired rights." (*Ibid.*)

As in *Colton*, the modification sought by CJA concerned issues that were not before the court in the judicial foreclosure action, and that pertained to matters occurring after judgment was entered. CJA sought to modify the judgment because 15 months after judgment was entered the senior lienholder, represented by the same attorney as CJA, foreclosed on the property, terminating CJA's right to enforce the judgment by sale. Based upon these events, CJA contended it was a sold-out junior lienholder, entitled to avoid the one action rule. However, in order to avail itself of the sold-out junior lienholder exception to the one action rule, CJA was required to prove that it had lost its security through no fault of its own. (*Graves, supra*, 51 Cal.App.4th at p. 611.) Because CJA's claim arose after judgment it is self-evident, and evident from the record, that issues pertaining to CJA's status as a sold-out junior lienholder were never raised by the pleadings before judgment, were never the subject of pretrial discovery, were never

presented by CJA as evidence intended to meet its burden of proof at trial, and were never tested by any defenses presented by appellants.[2] In the most fundamental way imaginable, the postjudgment modification based upon issues beyond the scope of the trial absolved CJA of its burden of proving its claim and deprived appellants of their right to present a defense.

"A judgment outside the issues is not a mere irregularity; it is extrajudicial and invalid." (*Colton, supra,* 226 Cal.App.2d at p. 649.) The trial court acted extrajudicially by modifying the judgment without undertaking to resolve the many factual issues raised by CJA's claim that it was a sold-out junior lienholder entitled to bypass the one action rule. No discovery or trial was ever undertaken into the question of CJA's culpability, if any, in losing the security by not foreclosing when it had the opportunity. A resolution of this issue was critical to properly deciding CJA's request for a money judgment, which had the effect of contravening the procedures designed to protect the debtor contained in Code of Civil Procedure section 726.

For these reasons, we reverse the order modifying the judgment, and direct that the original judgment of judicial foreclosure be reinstated.

### III. *Respondent's Motion to Strike and Request for Sanctions*

Respondent has filed a motion seeking to strike several passages in appellants' opening brief on the ground they refer to evidence that is not a part of the record. The objectionable references find their source in materials filed with appellants' "Application for Consideration of Additional Evidence," which we denied on November 12, 1999, one month after appellant's opening brief was filed. Because the citations find no support in the record on appeal, we grant respondent's motion to strike in its entirety. The accompanying request for sanctions is denied.

### DISPOSITION

Respondent made a clear and unequivocal election to proceed against appellants by way of judicial foreclosure. In requesting a modification of the judgment of judicial foreclosure, respondent sought to change its remedy against appellants by obtaining a money judgment. We hold that it was estopped from doing so because of its previous election. We further hold that

---

[2]Even disregarding appellants' reference to matters outside the record (see discussion regarding respondent's motion to strike, pt. III., *post*), the record itself contained enough information to, at minimum, raise questions about the allegiances between the senior and junior lienholders, the motivations behind the decisions being made by CJA and Revere, and CJA's culpability in losing the security.

the trial court exceeded its jurisdiction when it modified the judgment based upon issues that were never before it at trial. We reverse and remand to the trial court with directions that it vacate its order modifying the judgment and reinstate the prior judgment of judicial foreclosure. Appellants shall recover their costs on appeal.

McGuiness, P. J., and Parrilli, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 16, 2001.