Filed 10/13/23  Transition Financial Services v. Wintrust Bank CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| TRANSITION FINANCIAL SERVICES, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WINTRUST BANK, <br><br> Defendant and Appellant. | A162930/A163318 <br><br> (Alameda County Super. Ct. No. RG19002386) <br><br> **ORDER DENYING APPELLANT'S PETITION FOR REHEARING AND MOTION TO AUGMENT THE RECORD AND MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

Appellant's petition for rehearing is DENIED.  Appellant's motion to augment or correct the record is DENIED.  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; Cal. Rules of Court, rule 8.155(a)(1); Ct. App., First Dist., Local Rules, rule 4(c).)  The opinion filed on September 29, 2023, shall be MODIFIED as follows:

1

1. On page one, the third sentence of the second paragraph ("Although Wintrust . . . did not do so.") is replaced, as follows:

> Wintrust had not proved its attorney fees and costs in the foreclosure action.

2. On page four, in the fourth paragraph, the word "new" immediately following "and amount of Wintrust's" is deleted.

3. On page six, the second paragraph is replaced, as follows:

> Wintrust did not file a motion for attorney fees in the foreclosure action, and it never sought to appeal or modify the judgment in that case.

4. On page eight, the second sentence of the third paragraph is replaced, as follows:

> In the first action, Wintrust obtained a judicial foreclosure judgment and fixed the secured debt at about $244,000, which did not include attorney fees and costs.

5. The second full paragraph on page nine, which continues into page 10, is replaced as follows:

> *Chacker* and *Hart* support Wintrust's position that it may not have been able to recover its fees in the judicial foreclosure action under section 1717. But the fact remains that Wintrust obtained a judgment in that case that did not include attorney fees as part of the secured debt. To avoid electing this remedy, Wintrust could have dismissed its judicial foreclosure claim before judgment entered and elected to proceed with nonjudicial foreclosure. Instead, Wintrust pursued judicial foreclosure all the way to judgment, then changed its strategy by pursuing a different remedy for more money. The record supports the

trial court's conclusion that Wintrust pursued inconsistent remedies.[5]

6. The text of new footnote 5 (added at the end of the paragraph added by modification number 5, above) is as follows:

> In a petition for rehearing, Wintrust claims it attempted to put on evidence of its attorney fees and costs in the judicial foreclosure action, but the court sustained Transition's objections and stated these items must be raised via post-judgment motion. Assuming this is true, and assuming the trial court erred, Wintrust did not resolve the issue in the trial court or file an appeal. In any case, it does not change the outcome here. Wintrust still had the same options—judicial foreclosure or nonjudicial foreclosure. It elected judicial foreclosure. It is stuck with that choice.

7. At the end of the first partial paragraph on page 12 (which begins on page 11), the following new sentence is added:

> And with Wintrust still refusing to release the mortgage and the new lender balking, Herbstman authorized the second payment on February 1 to close the new financing and finally end the threat of a nonjudicial sale.

The modifications make no change to the judgment.

BURNS, J.

WE CONCUR:

JACKSON, P.J.
SIMONS, J.

3

Filed 9/29/23   Transition Financial Services v. Wintrust Bank CA1/5 (unmodified opinion)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TRANSITION FINANCIAL SERVICES, LLC,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WINTRUST BANK,<br><br>        Defendant and Appellant. | A162930/A163318<br><br>(Alameda County<br>Super. Ct. No. RG19002386) |

These consolidated appeals arise from the second of two actions concerning Transition Financial Services, LLC's liability to Wintrust Bank on a mortgage-backed loan.

In the first action, the trial court held Wintrust was entitled to judicial foreclosure.  But before judgment had entered, Wintrust noticed a nonjudicial sale of the subject property and claimed that Transition owed over $500,000 in attorney fees and costs.  Although Wintrust could have sought attorney fees and costs in the foreclosure action, it did not do so.  Transition filed this second action to enjoin the sale and to determine the amount owed.

Two things then happened, and the order in which they happened is important.  First, the court entered judgment in the foreclosure action.  Second, a few days later, facing the potential loss of the property at a nonjudicial sale, Transition paid

1

Wintrust's demands to release the mortgage, including the full amount of attorney fees and costs.

After trial in the second action, the court held that once Wintrust obtained a judgment in the foreclosure action, it had elected its remedy—judicial foreclosure—and fixed the amount owed. The court rejected Wintrust's argument that Transition's payment in the nonjudicial foreclosure process was voluntary. The court ordered Wintrust to return what Transition paid beyond the debt fixed by the prior judgment. We affirm.

## BACKGROUND

### A.

Judicial and nonjudicial foreclosure can be exercised alternatively or concurrently. (*Vlahovich v. Cruz* (1989) 213 Cal.App.3d 317, 322 (*Vlahovich*).) The lender can pursue both remedies and then complete the one it later selects. (*Ibid.*) This case requires us to decide how long the lender can put off that choice—and how it affects the borrower's right to pay off the debt and avoid a sale.

Some basic context is helpful. "Foreclosure" is so called because it cuts off the borrower's right to buy back the secured property by exercising the equitable right of redemption. (See *BFP v. Resolution Trust Corp.* (1994) 511 U.S. 531, 541.) To exercise this right, the borrower must pay all the secured debt, which may include attorney fees and costs incurred to protect the security. (Civ. Code, §§ 2903, 2905[1]; see *Chacker v. JPMorgan Chase Bank, N.A.* (2018) 27 Cal.App.5th 351, 356–357 (*Chacker*).) To aid this process, the borrower can request a payoff demand statement of the full amount owed. (§ 2943.) The right of redemption continues until either a judicial or a nonjudicial sale

---

[1] Undesignated statutory references are to the Civil Code.

2

is completed.  (5 Miller & Starr, Cal. Real Estate (4th ed. 2022) § 13:274.)

In other ways, the two processes diverge.  Most notably, in a judicial foreclosure, if the property sells for less than the outstanding debt, the lender may seek a deficiency judgment. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236.) But to encourage a sale at full value, the borrower has a continuing statutory right to redeem the property by paying the foreclosure sale price.  (5 Miller & Starr, *supra,* § 13:276.) Nonjudicial foreclosure is faster and less expensive, but it offers no possibility of a deficiency judgment.  (*Alliance Mortgage v. Rothwell*, *supra*, at p. 1236.)  The borrower has no right of redemption after a nonjudicial sale.  (*Ibid.*)

**B.**

The loan at issue here was made by Wintrust to Transition and a third entity, Phoenix Logistics, Inc. (Phoenix).[2]  It was secured by a second mortgage against a commercial property owned by Transition.  Phoenix's Chief Executive Officer, Fred Saul, executed the loan documents on Transition's behalf. Ultimately, Phoenix went out of business and fell behind on the payments.  Wintrust contacted Transition's majority owner, Clifford Herbstman, to collect.  Herbstman contended Saul was not authorized to obtain the loan on behalf of Transition.

Transition filed the first action in May 2017, seeking a declaration that the mortgage was invalid.  Wintrust filed a cross-complaint seeking judicial foreclosure.

In September 2018, Wintrust recorded a notice of default against the subject property, beginning the nonjudicial foreclosure process.

---

[2] Phoenix Logistics, Inc. is not a party to this appeal.

3

In October 2018, the court ruled in favor of Wintrust, including on its claim for judicial foreclosure. The court found that Transition owed $243,627.75 on the loan. This amount did not include attorney fees although, according to Wintrust, the loan agreement allows it to add attorney fees to the secured debt.

By the end of 2018, the court was still addressing post-trial issues and had not entered a judgment in the foreclosure action.

## C.

With the adverse ruling in the foreclosure action, Herbstman sought a loan to pay Wintrust. He found a lender and opened escrow. The escrow officer made a payoff demand to Wintrust, which responded that over $800,000 was due on the loan. This included over $500,000 in attorney fees. Wintrust also recorded a notice of trustee's sale scheduling a nonjudicial foreclosure sale for January 30, 2019.

In response, Transition filed this lawsuit and sought to enjoin the sale and to determine the amount due on the mortgage, including the propriety and amount of Wintrust's new claim for attorney fees.

The then-assigned judge issued a temporary restraining order subject to an $800,000 bond. The court stayed posting of the bond until the assigned judge could confer with Judge Frank Roesch, who had presided over the foreclosure action.

According to Herbstman, Transition was unable to obtain a bond, so he arranged to pay the full amount of Wintrust's demand, which Transition's loan escrow tendered on January 24 or 25, 2019. Meanwhile, the newly filed action was reassigned to Judge Roesch.

On January 28, Wintrust rejected Transition's offer, stating that Transition now owed more money because Wintrust had incurred additional attorney fees from the new lawsuit after it

had sent the payoff demand. Counsel for Wintrust stated that it would not release the mortgage "until we have resolved the actual outstanding indebtedness, which continues to accrue."

Meanwhile, on January 29, the trial court entered the judgment in the earlier foreclosure action. Consistent with the ruling after trial, the court entered judgment in favor of Wintrust on the judicial foreclosure claim and declared $243,627.75 due on the loan. It stated Wintrust could seek attorney fees in the manner prescribed by law.

On February 1, Wintrust issued another payoff demand statement for a further $17,724.63 in legal expenses and bank costs, which Transition tendered the same day. Wintrust then released the mortgage on Transition's property.

But the parties' dispute continued. Transition maintained Wintrust's demand included an unreasonable amount (over $500,000) of attorney fees, and it (Transition) was coerced into paying the entire demand to avoid losing the property in a trustee's sale. It therefore continued to pursue its claim for a determination of the amount owed on the mortgage.

After a bench trial, the court ruled for Transition. It held Wintrust elected judicial foreclosure in the earlier action, and it was therefore barred from seeking the inconsistent remedy of nonjudicial foreclosure. And since the prior judgment fixed the amount due on the loan, Transition could recoup everything it paid beyond what it owed on the judgment as a coerced overpayment. The court rejected Wintrust's argument that the loan documents made its fees and costs from the foreclosure action part of the secured debt, reasoning that Wintrust was collaterally estopped from claiming the debt was more than it proved in the prior action. And "Wintrust waived its costs and attorney fees by operation of law when it neglected to [timely] file either its memorandum of costs or its attorney fee motion" in that case.

5

Wintrust appealed both the judgment in this case and the trial court's award of fees and costs to Transition as the prevailing party. We consolidated these appeals by stipulation of the parties.

Wintrust never sought attorney fees in the foreclosure action, or to appeal or modify the judgment in that case.

## DISCUSSION

### A.

Wintrust contends the trial court erred by finding it elected judicial foreclosure before accepting Transition's payoff—and to the extent there was an election, it merely barred a nonjudicial foreclosure sale, without affecting the payoff process. We reject these arguments and find substantial evidence supports the trial court's ruling.[3]

### 1.

The election of remedies doctrine is based on equitable estoppel. (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 759.) It holds that if a plaintiff elects a remedy in lieu of an alternative and inconsistent one and gains an advantage to the defendant's detriment, the plaintiff is precluded from seeking the alternative remedy. (*Ibid.*) The issue is for the trial court to resolve, unless the facts can support only one reasonable conclusion. (*Ibid.*)

---

[3] Wintrust further argues it did not waive its fees and costs in the foreclosure action. To the extent this was an alternative ground for the trial court's ruling in this case, we need not address it because we affirm the trial court's ruling based on election of remedies. And since no appeal of the foreclosure action is before us, we do not address Wintrust's request for an order directing an award of fees and costs in that action.

In the foreclosure context, the doctrine is applied where a lender (1) knowledgeably and unequivocally pursued a judicial foreclosure action to judgment and (2) attempted to change course in a manner prejudicial and unjust to the borrower. (*C.J.A. Corp. v. Trans-Action Financial Corp.* (2001) 86 Cal.App.4th 664, 669–671 (*C.J.A.*).)

**2.**

Wintrust does not dispute it knowledgeably and unequivocally pursued judicial foreclosure to judgment in the foreclosure action. And the record is clear that Wintrust chose to file that claim, to litigate it through trial, and to seek entry of judgment on the claim by submitting a proposed statement of decision and judgment. As the trial court observed, that submission was "[t]he last word from Wintrust" in the foreclosure action.

While disputed by Wintrust, substantial evidence also supports the trial court's finding that judgment entered in the foreclosure action before Wintrust accepted Transition's payoff. Transition tendered its first payment to Wintrust on January 24 or 25, 2019. On January 28, Wintrust responded that this tender was "insufficient to payoff the loan" and it would not release the mortgage "until we have resolved the actual outstanding indebtedness, which continues to accrue." Wintrust's response was not an acceptance of Transition's payoff but a rejection pending a counteroffer. (See § 1585; *Landberg v. Landberg* (1972) 24 Cal.App.3d 742, 750 [a qualified acceptance is a rejection terminating the offer].) The next day, the court entered the final judgment in the foreclosure action. A few days later, on February 1, Wintrust accepted the payoff after it had issued a demand for an additional $17,724.63, which Transition paid that same day. The record thus supports the trial court's finding that the judgment (and hence Wintrust's election of the judicial foreclosure remedy) preceded the payoff.

7

**3.**

Wintrust concedes entry of judgment in the foreclosure action was inconsistent with its continued pursuit of a trustee's sale from that point. But it insists it was perfectly consistent to accept a payoff from Transition to avoid a judicial foreclosure sale.

That is true so far as it goes: Transition's right to redeem the property continued until a sale was completed. (§ 2903.) But the trial court did not find otherwise. Rather, it affirmed Wintrust could "properly apply whatever funds it received to satisfy the judicial foreclosure judgment and the indebtedness established by that judgment." However, Wintrust went much further by tacking on over $500,000 in attorney fees to its payoff demand statement and extracting those fees and more from Transition under threat of a trustee's sale.

The record supports the trial court's finding that this nonjudicial remedy was inconsistent with Wintrust's election in the foreclosure action. In the first action, Wintrust obtained a judicial foreclosure judgment, fixed the secured debt at about $244,000, and never tried to add its attorney fees and costs to the secured debt. Then, it changed course by proceeding with a separate, nonjudicial foreclosure process in which it noticed a trustee's sale and sought more than $500,000 in attorney fees as part of the secured debt.

Wintrust does not squarely address these inconsistencies, nor do the statutes and other authorities it cites. Rather than arguing it acted consistently with its election of judicial foreclosure, Wintrust seems to claim it should retain what it secured at payoff because it *could not* recover these fees and costs in the foreclosure action. It cites *Chacker, supra*, 27 Cal.App.5th

8

351 and *Hart v. Clear Recon Corp.* (2018) 27 Cal.App.5th 322 (*Hart*).[4]

In *Chacker*, a homeowner sued to stop nonjudicial foreclosure proceedings against her home. (*Chacker, supra*, 27 Cal.App.5th at p. 353.) The trial court sustained demurrers by the mortgage holders without leave to amend and awarded them attorney fees under section 1717, finding the deed of trust included attorney fee provisions for this purpose. (*Chacker, supra,* at pp. 353–355.) The court of appeal reversed the attorney fee award. (*Id.* at p. 356.) It reasoned that while the deed of trust provisions allowed the mortgage holders to charge the borrower for attorney fees incurred to protect their rights under the instrument, they only permitted these fees to be added to the underlying debt and did not authorize a freestanding contractual attorney fee award. (*Id.* at pp. 356–359.) *Hart* similarly held a provision in a deed of trust allowing attorney fees to be added to the secured debt was not an attorney fee provision for purposes of section 1717. (*Hart, supra,* 27 Cal.App.5th at p. 327.)

*Chacker* and *Hart* support Wintrust's position that it may not have been able to recover its fees in the judicial foreclosure action under section 1717. But here, Wintrust drops the thread. It fails to explain why it didn't follow *Chacker* and *Hart* in the foreclosure action by offering evidence of its fees and adding them to the secured debt. Alternatively, Wintrust could have dismissed its judicial foreclosure claim before judgment entered and elected to proceed with nonjudicial foreclosure. Instead, Wintrust pursued judicial foreclosure all the way to judgment,

---

[4] Wintrust asserts that, as in *Chacker* and *Hart*, its fees and costs became part of the secured debt per the loan documents. We assume without deciding that Wintrust is correct about this. If Wintrust is wrong—and its fees and costs did not become part of the secured debt—they were not properly demanded at payoff for that reason.

9

then changed its strategy by pursuing a different remedy for more money. The record supports the trial court's conclusion that Wintrust pursued inconsistent remedies.

**4.**

Finally, the modern approach to election of remedies requires us to consider the prejudice to the borrower caused by the lender's belated change of remedy. (*C.J.A., supra*, 86 Cal.App.4th at p. 670.) Substantial evidence supports the trial court's finding of prejudice. Transition was forced to tender a much larger payoff to avoid foreclosure than it was adjudged to owe in the foreclosure action, even while Wintrust preserved any right to a deficiency judgment. (See *Vlahovich, supra*, 213 Cal.App.3d at p. 323.) Transition had to pay the full amount without the benefit of a ruling on its arguments that the claimed fees were excessive and impermissible. It had to bring an otherwise unnecessary second lawsuit to protect its property from foreclosure and recover its overpayments. (See *C.J.A., supra*, at p. 671.) Wintrust's change of course also undercuts the policy favoring finality of actions by forcing the trial court and the parties to revisit issues that were—or should have been—addressed in the prior action. (See *ibid.*)

**B.**

Wintrust contends the voluntary payment doctrine barred Transition from recovering any portion of its payoff. Again, we disagree.

**1.**

The voluntary payment doctrine is rooted in the equitable doctrine of economic duress. (See *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158.) Duress is found where a person pays money that is not owed, which in equity the receiver should not retain, to preserve his property or protect his business interests. (*Western etc. Oil Co. v. Title Ins. &*

10

*Tr. Co.* (1949) 92 Cal.App.2d 257, 266.)  It requires a wrongful act coercive enough to make a reasonably prudent person, with no reasonable alternatives, succumb to the pressure.  (*Rich & Whillock, Inc. v. Ashton Development, Inc., supra,* at p. 1158.)

Requiring overpayment to secure the release of a mortgage is duress.  (*Steffen v. Refrigeration Discount Corp.* (1949) 91 Cal.App.2d 494, 497 (*Steffen*).)  Based on this doctrine, a mortgagor who disputes the amount demanded for redemption can pay the full demand and recover the excess.  (5 Miller & Starr, *supra,* § 13:241.)

We review the trial court's findings concerning voluntary payment for substantial evidence.  (*Steinman v. Malamed* (2010) 185 Cal.App.4th 1550, 1556 (*Steinman*).)

**2.**

There is plenty of evidence to support the trial court's findings that Transition's payments were coerced and made under protest.  Wintrust noticed a nonjudicial foreclosure sale for January 30, 2019.  Transition promptly filed this action, specifically alleging the indebtedness stated in the notice of sale was "inaccurate and excessive," complaining that Wintrust "refuses to submit the fees incurred in [the foreclosure action] to the court," and asserting that "Wintrust is not entitled to any recovery for attorney fees until the court determines such fees to be reasonable."  Transition obtained a temporary restraining order, but Herbstman testified it could not secure the required bond.  Bond agents uniformly told him they would need $800,000 in cash or a first lien on real property worth at least that much.  But Transition did not have access to that amount of assets and there was an existing first lien on the property.  Herbstman tried to confirm the sale was off, but received ambiguous responses from Wintrust and concluded its counsel "was doing all he could to sandbag us into closing our eyes so he could sell" the property.  There was no word on the outcome of any judges' conference

11

about the bond requirement, so Herbstman could not assume it would continue to be stayed. Understanding he "could not go a day longer" to close escrow before the sale, he told the escrow company to pay Wintrust's demand to protect the property— which provided substantially all of his wealth and income.

Wintrust claims there was no real threat that the sale would proceed on January 30. It argues that even if the injunction terminated, section 2924g, subdivision (d) required the sale to be rescheduled to a date at least seven days later (unless a court order directed an earlier sale). But Herbstman could not predict what the judges might decide on the bond requirement, and the trial court credited his testimony that he justifiably did not believe Wintrust would reschedule the sale.

Wintrust insists Transition had other reasonable options than paying its demands. It posits that Transition (or Herbstman) could have used the payoff financing to post a bond; assigned the first lien on the property (held by another of Herbstman's companies) as security for the bond; petitioned to reduce or eliminate the bond requirement or appealed it; or obtained a mortgage on Herbstman's residence to satisfy the bond. However, Herbstman's testimony provides substantial evidence that these other options were unavailable or unacceptably risky given the time constraints and other circumstances Transition faced. As observed in *Steffen*, a mortgagor under threat of foreclosure typically must sell or refinance to save his property and can only do so if he satisfies the mortgage as part of the same transaction. (*Steffen, supra*, 91 Cal.App.2d at p. 498.) The trial court reasonably concluded that this was the only available path to a reasonably prudent mortgagor here.

Finally, Wintrust contends there was nothing wrongful about its demands since it was entitled to pursue both judicial and nonjudicial foreclosure until an election of remedies occurred.

We have already determined, however, that Wintrust elected judicial foreclosure by pursuing that claim to judgment, and its demands for more money in a separate process were inconsistent with its election and therefore wrongful. Wintrust further argues that for its demand to be wrongful, it must have known the demand was false, citing dicta in *Steinman*. However, *Steffen* imposed no such requirement and applied an earlier case where a bank required an overpayment in error. (*Steffen, supra,* 91 Cal.App.2d at p. 497.) The Restatement of The Law of Restitution and Unjust Enrichment approves *Steffen* in its discussion of how a good faith demand can still be coercive. (Rest.3d Restitution and Unjust Enrichment § 14, illus. 14.) We agree and affirm the trial court's finding that Wintrust's demands were wrongful.

## C.

Finally, Wintrust appeals the trial court's award of attorney fees and costs to Transition as the prevailing party, but only on the ground that the underlying judgment in Transition's favor should be reversed. Since we will affirm the judgment, we will likewise affirm the award of fees and costs.

## DISPOSITION

The judgment is affirmed. The trial court's award of attorney fees and costs to Transition is affirmed. Transition is entitled to its costs on appeal.

13

_____
BURNS, J.

We concur:

_____
JACKSON, P.J.

_____
SIMONS, J.

A162930/A163318

14