[No. C030453. Third Dist. Dec. 31, 2001.]

NATIONAL ENTERPRISES, INC., Plaintiff and Appellant, v.
MICHAEL W. WOODS et al., Defendants and Respondents.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for
publication with the exception of part II.C through E.

## COUNSEL

McKenna & Cuneo, Michael H. Fish; Nugent & Newnham and Jeffrey Poindexter for Plaintiff and Appellant.

George P. Eshoo & Associates and George P. Eshoo for Defendants and Respondents.

## OPINION

**KOLKEY, J.**—This appeal raises the issue whether, in a case where senior and junior debts, secured by the same property, were once held by the same creditor, which thereafter sells the loans to two independent parties, California's one-form-of-action rule under Code of Civil Procedure section 726 prohibits the junior lienholder from bringing a separate action to recover its debt following the senior lienholder's judicial foreclosure of the property.

In this case, a bank made to a single borrower successive loans secured by successive deeds of trust on the same property. The bank failed; the borrower defaulted on the loans; and the receiver sold the two loans to different parties. Appellant National Enterprises, Inc. (NEI) acquired the junior of the two debts. After a bench trial, the court concluded that NEI could not recover its junior debt because of a prior judicial foreclosure brought by the holder of the senior debt.

We shall reverse. Neither the plain language nor the underlying purpose of the one-form-of-action rule bars an independent junior lienholder from bringing a single action to recover a debt after the security for that debt has been lost following a judicial foreclosure brought by the senior lienholder.

The purpose of the rule is to limit a secured creditor to a single suit to enforce its security interest and collect its debt and to compel the exhaustion of all security before a monetary deficiency judgment may be obtained against the debtor. (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 997 [275 Cal.Rptr. 201, 800 P.2d 557] (*Wozab*); *Walker v. Community Bank* (1974) 10 Cal.3d 729, 736 [111 Cal.Rptr. 897, 518 P.2d 329] (*Walker*).) Here, neither purpose would be furthered: The security for the debt had previously been exhausted for purposes of paying the senior lienholder's debt and the junior lienholder sought to enforce its debt in a single suit.

Moreover, the plain language of the statutory rule only speaks in terms of an action on "any debt" and does not bar separate actions on separate debts. Treatment of two bona fide debts (held by senior and junior lienholders) as if they were one within the meaning of the one-form-of-action rule, simply because the two debts were once secured by the same property and held by a single creditor, not only is an unnecessary extension of the statute's language (because it would treat two debts as one and would fail to further the rule's purpose), but would also place the more patient lienholder at the

mercy of the more impatient one, hindering the sale of such debts in the secondary mortgage market and accelerating (ironically) the collection of both debts to the detriment of the debtor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants Michael W. Woods, William Mitchell, and Robert Laird are former general partners of Parkway Garden Associates (PGA).[1]

### A. *The Original Loans*

In 1986, PGA, by and through defendants, executed a $2.7 million promissory note in favor of County Savings Bank (County Savings). The note was secured by a first deed of trust on a 128-unit apartment building.

In 1988, PGA, by and through defendants, executed a second promissory note for $150,000 in favor of County Savings to cover the delinquent amounts of the first loan. This second note was secured by a second deed of trust on the same property.

Both the first and second deeds of trust contained a clause, known as a dragnet clause, that provided in part: "Upon request of Borrower, Lender [County Savings], at Lender's option so long as this Instrument secures indebtedness held by Lender, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Instrument when evidenced by promissory notes stating that said notes are secured thereby."

The dragnet clause further provided that such future advances could not exceed the original amount of the note, plus an "additional sum," which amount was to be entered in a blank space. The term "N/A" was typed in that space on the first deed of trust, and was left blank on the second deed of trust.

### B. *The Modification of the Loans*

PGA continued to have trouble making loan payments. In connection with the sale of PGA to Jose Diaz (Diaz) based on a purchase agreement

---

[1]We refer to these defendants individually by their names and collectively as defendants. Their spouses, Janice Woods, Vicki Mitchell, and Annette Laird, were also named as defendants in this proceeding, but solely because they signed a consent to a loan repayment guaranty that NEI seeks to enforce in its second cause of action. Because we conclude that NEI is entitled to recover against defendants under its first cause of action on the note, and because NEI does not pursue on appeal any claims on the guaranty against the spouses, we do not recite in detail the facts related to NEI's claim on the guaranty.

scheduled to close on May 1, 1989, PGA sought to modify the two loans to increase the amount of the second loan to $280,000 and to reduce slightly the amount of the first loan.

On May 1, 1989, County Savings and PGA modified the existing first and second notes and deeds of trust. The first note for $2.7 million was replaced with a new note in the amount of $2,651,497.55 (which note we will continue to refer to as the first note), executed by PGA, by and through its general partners, now identified as Woods, Mitchell, Laird, and Diaz. On the same day, PGA, by and through the same PGA partners, signed a note for $280,000 to replace the $150,000 note (which note we will continue to refer to as the second note). The first and second deeds of trust were accordingly modified, and Woods, Mitchell, Laird, and Diaz concurrently executed a repayment guaranty of the $280,000 note.

### C. The Foreclosure Action

From 1992 on, no payments were made on the first and second notes.

The Resolution Trust Corporation (RTC), which had been appointed as receiver of County Savings in 1992 to liquidate the bank, assigned the first note and the modified first deed of trust to State Street Bank (State Street), while it retained the second note and the modified second deed of trust.

In April 1993, State Street commenced a *judicial* foreclosure action with respect to the first deed of trust and moved for summary judgment. The court entered a judgment of foreclosure and ordered the property sold. It also found PGA, Woods, Mitchell, Laird, and Diaz personally liable for the debt and subject to a deficiency judgment to be determined pursuant to section 726 of the Code of Civil Procedure. Woods, Mitchell, and Laird settled the deficiency for $500,000.[2]

### D. The Assignment of the Second Loan

In 1996, the Federal Deposit Insurance Corporation (FDIC), which had succeeded the RTC as receiver of County Savings, sold the second loan to

---

[2]Prior to the commencement of the State Street action but apparently after the assignment of the first note and deed of trust, the RTC had filed an action for judicial foreclosure on the second loan, naming Woods, Mitchell, Laird, their spouses, and others as defendants. However, this action was dismissed almost four years later when counsel for the RTC failed to appear at a hearing set by an order to show cause. The only legal argument raised in connection with the dismissal of the earlier action is defendants' claim of laches, which we address in an unpublished portion of the opinion. Any other argument is waived. (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [32 Cal.Rptr.2d 762, 878 P.2d 521].)

Morehouse Acquisitions No. 1 LLC (Morehouse), assigning its interest in the second note, the second deed of trust, as modified, and the guaranty. Morehouse, which is controlled by NEI, transferred its interest in the loan to NEI.

### E. *The Present Proceeding*

On or around July 10, 1996, NEI commenced the present action against defendants and their spouses for nonpayment of the second note and breach of the guaranty.

The court conducted a trial and issued a statement of decision in favor of defendants. The court determined that the first and second deeds of trust had "merged" by virtue of the "dragnet clause" in the first deed of trust, which provided that the first deed of trust could be used as security for future advances. The court reasoned that "the intent of County Savings Bank was to rely on the original security . . . as security for the first and second loans." It therefore concluded, citing Code of Civil Procedure section 726 (the one-form-of-action rule),[3] that "[w]ith the merger of the liens and the obligations and [State Street's] foreclosure of the first deed of trust, plaintiff NEI is barred from any further attempt to collect the obligation on the second note . . . ." As to the guaranty, the court found that Woods, Mitchell, and Laird were still general partners of PGA when they signed the guaranty and that "a guaranty of the partnership debt by a partner is not enforceable" because "a true guarantor is one who is not already liable on the guaranteed obligation."

The court entered judgment for defendants and awarded them, as prevailing parties, attorney fees and costs (later determined to be $88,203.15) pursuant to section 1717 of the Civil Code. NEI filed a timely notice of appeal from the judgment.

## II. DISCUSSION

### A. *Standard of Review*

Defendants maintain that the substantial evidence test guides our review. Under this test, a trial court's resolution of a factual issue supported by substantial evidence must be affirmed. (See *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378].)

But with the possible exception of the issue of judicial estoppel—an issue we need not reach in this appeal—NEI does not contest the trial court's

---

[3]See footnote 8 for the text of the one-form-of-action rule. (Code Civ. Proc., § 726, subd. (a).)

findings of fact. █ Accordingly, we agree with NEI that the primary issue before us—whether NEI's action is barred by the one-form-of-action rule—involves no disputed facts and can be reviewed de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *Paykar Construction, Inc. v. Bedrosian* (1999) 71 Cal.App.4th 803, 806 [84 Cal.Rptr.2d 135] (*Paykar*).)

**B.  *NEI's Action Is Not Barred by the One Form of Action Rule***

The trial court in this case concluded that "County Savings . . . intended to merge the first and second deeds of trust as it looked to the original security in making the second loan to the partnership . . . ." It therefore held that "[w]ith the merger of the liens . . . and the foreclosure of the first deed of trust, plaintiff NEI [was] barred from any further attempt to collect the obligation on the second note" by reason of the one-form-of-action rule under Code of Civil Procedure section 726.[4]

Presumably, the logic of the trial court's decision is that if the first and second deeds of trust had merged, State Street's judicial foreclosure (and the resulting deficiency judgment) was the only action permitted to collect the debts secured by the property.

*1.  Background of the Antideficiency and Foreclosure Laws*

Because the distinction between judicial and nonjudicial foreclosures is important to an understanding of the issues in this case, we begin with a brief discussion of these two remedies.

"[D]uring the [G]reat [D]epression with its dearth of money and declining property values, a mortgagee was able to purchase the subject real property at [a] foreclosure sale at a depressed price far below its normal fair market value and thereafter to obtain a double recovery by holding the debtor for a large deficiency." (*Simon v. Superior Court* (1992) 4 Cal.App.4th 63, 68-69 [5 Cal.Rptr.2d 428] (*Simon*).) Accordingly, California enacted an interrelated set of foreclosure and antideficiency statutes to protect debtors. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236 [44 Cal.Rptr.2d 352, 900 P.2d 601] (*Alliance Mortgage*).)

█ "Pursuant to this statutory scheme, there is only 'one form of action' for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust. That action is foreclosure, which may be either

---

[4]Unless designated otherwise, all further statutory references are to the Code of Civil Procedure. The text of the one-form-of-action rule is quoted in footnote 8, *post.*

judicial or nonjudicial. [Citation.] In a judicial foreclosure, if the property is sold for less than the amount of the outstanding indebtedness, the creditor may seek a deficiency judgment, or the difference between the amount of the indebtedness and the fair market value of the property, as determined by a court, at the time of the sale. [Citation.] However, the debtor has a statutory right of redemption, or an opportunity to regain ownership of the property by paying the foreclosure sale price, for a period of time after foreclosure. [Citations.] [¶] In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust. [Citations.] Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption. [Citation.] However, the creditor may not seek a deficiency judgment. [Citation.] Thus, the antideficiency statutes in part 'serve to prevent creditors in private sales from buying in at deflated prices and realizing double recoveries by holding debtors for large deficiencies.' " (*Alliance Mortgage, supra,* 10 Cal.4th at p. 1236.)

■ The primary antideficiency statute is section 580d. It prohibits a deficiency judgment following a nonjudicial sale. (This diminishes the importance of an earlier enacted statute, section 580a, which only limited the *amount* of a deficiency judgment following a nonjudicial foreclosure.) (*Simon, supra,* 4 Cal.App.4th at p. 70.) "The purpose of section 580d is apparent from the fact that it applies if the property is sold under a power of sale, but not if the property is foreclosed and sold by judicial action. . . . If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment. In either case the debtor is protected." (*Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 43-44 [27 Cal.Rptr. 873, 378 P.2d 97] (*Roseleaf*).)

In this case, the first note was foreclosed pursuant to a *judicial* foreclosure action. Thus, a deficiency judgment was not prohibited, and neither section 580a nor section 580d has any application here.[5] The judicial foreclosure here protected the defendants against a foreclosure sale at a deflated price, with the attendant risk of a double recovery by the foreclosing creditor. (See *Roseleaf, supra,* 59 Cal.2d at pp. 40, 42.)

### 2. *Defendants' Claim of Merger*

■ As noted, the trial court ruled that County Savings had merged the first and second deeds of trust and that with State Street's foreclosure of the

---

[5]Nor is section 580b applicable here. It bars any deficiency judgment after foreclosure where the debt is secured by a purchase money mortgage, which is not at issue here.

first deed of trust, NEI was barred from any further attempt to collect the obligation owed under the second note. We shall address the merger issue first.

NEI argues that the merger doctrine is not applicable here and that "the one-action rule does not prohibit a subsequent lawsuit by a sold-out junior lienor under the circumstances like this case."

Defendants respond that "the second deed of trust merged into the first deed of trust, as a matter of law, since both were executed in favor of County Savings Bank, and both were secured by the identical property." They explain that "[o]ne of the bases for finding a merger, as a matter of law, was that the second note, although specifically secured by the Second Deed of Trust was also a note secured by the First Deed of Trust, by virtue of the 'dragnet clause.'"

The trial court's analysis, merging the first and second deeds of trust, is derived from the lead opinion of Presiding Justice Molinari in *Union Bank v. Wendland* (1976) 54 Cal.App.3d 393 [126 Cal.Rptr. 549] *(Union Bank)*. There, a bank exercised its power of sale under a first deed of trust to foreclose nonjudicially on a residence purchased by the defendant and his wife. The bank then filed a complaint against the defendant on a third note that was secured by a second deed of trust on the same property. (The third note had been used to pay off a second note and to make payments under the first note.) The defendant argued that since a deficiency judgment could not be obtained following a nonjudicial foreclosure under the first deed of trust, the bank could not recover under the third note secured by the same property. Relying on the dragnet clause in the first deed of trust—which provided that it secured the payment of additional sums thereafter due or owing from defendant—the lead opinion concluded that the third note was also secured by the first deed of trust and thus could not be subject to a further action after the nonjudicial foreclosure.

Using two tests for ascertaining the intent of the parties, the lead opinion ruled that "the trial court was required to find that the parties intended that the third loan was protected by the original real estate security and that the inference drawn by the [trial] court that the third note was not intended by the parties to be secured by the first deed of trust is wholly irreconcilable with the evidence. [Citations.] The $10,975.40 borrowed on the third note was used to pay off the . . . second note . . . borrowed for the purpose of remodeling the residence and the balance was applied to payments due under the terms of the first note. There was clearly a relationship between the loans, and, significantly, it is inescapable that the parties intended the same

real estate security to be the security for the original note and the note in question. . . . [¶] . . . Accordingly, defendant's continuing offer in the dragnet clause of the first deed of trust to secure further loans under the real estate security therein conveyed was accepted by [the bank] when it specifically agreed to take the same security under the second deed of trust. . . . Having relied on the same security provided for in the first deed of trust there was no need or necessity for the execution of a second deed of trust. [¶] I am persuaded that under the circumstances of this case the second deed of trust merged into the first deed of trust. . . . A 'merger' occurs when a greater estate and a lesser coincide in the same person in one and the same right without any intermediate estate. [Citations.] Here, the second deed of trust was the lesser estate. It was annihilated or merged into the greater estate, i.e., the first deed of trust, without any intermediate estate intervening. The question is one of intent, actual or presumed, of the person in whom the interests are united. . . . To permit [the bank] to avoid the effect of section 580d by what amounts to a method of paper shuffling, i.e., the execution of the second deed of trust with the same security on which [the bank] relied as security in making the original loan, is to countenance an evasive device and to permit a circumvention of the antideficiency statutes." (*Union Bank, supra*, 54 Cal.App.3d at pp. 405-406.)

We decline to apply the lead opinion in *Union Bank* to this case for four reasons.

First, as reflected in the just-quoted portion of the lead opinion in *Union Bank*, the decision was ultimately premised on the intent of the parties. But here, a construction that merges the first and second deeds of trust would be contrary to the language of the loan documents. Unlike *Union Bank*, the dragnet clause in the first deed of trust here provided that future advances would be secured by the deed of trust "when evidenced by promissory notes stating that said notes are secured thereby." But the second note did not so state. Instead, the second note expressly identified the second deed of trust as the applicable security instrument. Thus, the dragnet clause was not invoked here. The same conclusion was reached in *Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1421 [92 Cal.Rptr.2d 577] (*Ostayan*), which, construing a similar clause, stated: "[W]e see no reason even to get into a discussion of the merger issue. . . . [T]he so-called dragnet clauses involved here, by their terms, simply have no application."

Moreover, the dragnet clause in this case stated that the inclusion of future indebtedness under the first deed of trust was at the "Lender's option," and the *second* note's reference to the *second* deed of trust established that the

lender (County Savings) had not exercised that option. ■ As the Court of Appeal observed in *Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54-55 [67 Cal.Rptr.2d 850], "Although the intent of the parties determines the meaning of the contract (Civ. Code, §§ 1636, 1638), the relevant intent is 'objective'—that is, the objective intent as evidenced by the words of the instrument . . . ." And " '[w]here contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further.' " (*Id.* at p. 53; Civ. Code, § 1638.) ■ In the absence of a statutory requirement, we will not construe the contract documents here contrary to their clear written terms where such a construction does not lead to an absurd result. Otherwise, a lender holding two deeds of trust on the same property could never draft a second deed of trust with different terms than the first deed of trust.

Our second reason for not applying the lead opinion in *Union Bank* is that it has little precedential value since it was not fully joined by the second judge. *Union Bank* was a two-to-one decision. The reasoning of the majority's second vote, that of Justice Elkington, differed from the lead opinion's analysis. Although he began his concurrence by stating that he concurred "in the opinion . . . and the result" (*Union Bank, supra, supra,* 54 Cal.App.3d at p. 407), Justice Elkington then proceeded to reject the lead opinion's analysis that the intent of the parties in their loan documents was relevant. Instead, he reasoned, section 580d (the bar on a deficiency judgment following a nonjudicial foreclosure) could not be waived; thus, successive loans made by the same creditor and secured by the same property could not be used to allow the creditor to bring suit to recover the junior debt, following a nonjudicial foreclosure to satisfy the senior debt, because this would circumvent section 580d's ban on deficiency judgments. (*Union Bank, supra,* at pp. 408-409 (conc. opn. of Elkington, J.).) Without a second vote, the lead opinion has little precedential value. (See *People v. McKinnon* (1972) 7 Cal.3d 899, 911 [103 Cal.Rptr. 897, 500 P.2d 1097] [judgment of an equally divided Supreme Court is without force as precedent].)

Third, the lead opinion's application of the merger doctrine to the first and second deeds of trust in *Union Bank*—on the basis that a merger results when greater and lesser estates coincide in the same person—has little legal support. The Supreme Court cases on which the lead opinion based this proposition did not actually rule that first and second deeds of trust could be merged. (E.g., *Linforth v. Montgomery* (1924) 195 Cal. 49 [231 P. 735] [merger of legal and equitable titles]; *Shaffer v. McCloskey* (1894) 101 Cal. 576, 580 [36 P. 196] [doctrine of merger could not be successfully invoked].) Thus, the lead opinion fails to cite any applicable authority for

its conclusion that senior and junior liens constitute greater and lesser estates in property that merge when held by the same person. (*Union Bank, supra,* 54 Cal.App.3d at p. 406.) To the contrary, the typical application of the merger doctrine to liens involves the extinguishment of a lien held by a person who acquires *title* to the property. (Civ. Code, § 2910; *Alliance Mortgage, supra,* 10 Cal.4th at p. 1235; *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 606 [125 Cal.Rptr. 557, 542 P.2d 981]; *Strike v. Trans-West Discount Corp.* (1979) 92 Cal.App.3d 735, 742 [155 Cal.Rptr. 132] ["[a] lien is extinguished by merger when a lienholder acquires ownership of the property"].)[6] And one treatise has criticized the lead opinion in *Union Bank* as a misuse of the doctrine: "The application of merger to the case appears erroneous since the two deeds of trust are equal 'estates' in the same property of the same class and type, and the first lien is not a 'greater estate' merely because it has priority to the proceeds on a sale of the property. The reference to the doctrine of merger was unfortunate because if the error is compounded, the same result would follow even if the first lien did not contain a 'dragnet' clause, and the court probably did not intend to establish such a precedent." (4 Miller & Starr, Cal. Real Estate, *supra,* § 10.41, p. 133, fn. 14.)

Fourth and finally, subsequent appellate cases involving multiple loans to a single debtor, secured by the same real property and made by a single lender, have not applied the lead opinion's merger doctrine, but instead have embraced Justice Elkington's concurring opinion in *Union Bank.* (E.g., *Simon, supra,* 4 Cal.App.4th at pp. 74-79; *Ostayan, supra,* 77 Cal.App.4th at pp. 1421-1422.) Thus, in *Simon, supra,* 4 Cal.App.4th at page 66, the Court of Appeal held that "where a creditor makes two successive loans secured by separate deeds of trust on the same real property and forecloses under its senior deed of trust's power of sale, thereby eliminating the security for its junior deed of trust, section 580d . . . bars recovery of any 'deficiency' balance due on the obligation the junior deed of trust secured."

In this case, there is no danger that section 580d will be circumvented. The senior lienholder, State Street, foreclosed *judicially*; therefore, section 580d is not applicable and would not be circumvented if the junior lienholder (NEI) is permitted to recover its debt. California law permits a deficiency judgment after sale of the property in a *judicial* foreclosure

---

[6]The court in *Strike v. Trans-West Discount Corp., supra,* 92 Cal.App.3d at pages 742-743, referred to the *Union Bank* merger doctrine with approval but did not apply it. (See also 4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:41, p. 133, fn. 14.)

action. (§ 726, subd. (b);[7] 1 Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar. 3d ed. 2000) § 5.5, p. 286 [§ 580d "limits deficiency judgments following nonjudicial foreclosures only—not judgments following judicial foreclosures"]; Greenwood & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2000) ¶ 6:519, p. 6-92 [a "lender holding both senior and junior liens on [the] same property could preserve [the] right to [a] deficiency judgment under [a] junior lien only by electing *judicial* foreclosure of [the] senior lien" (original italics)].)

Accordingly, we conclude that the merger doctrine cannot be applied to merge NEI's second deed of trust into the first deed of trust: Such a merger would be contrary to the terms of the loan documents; the first and second deeds of trust are equal estates and not subject to the merger doctrine; and the purpose underlying the merger rule in the lead opinion in *Union Bank*—to bar the recovery of a deficiency judgment by a creditor who makes successive loans secured by the same property to the same borrower and who then forecloses nonjudicially on the senior deed of trust—is not implicated here.

### 3. *The One Form of Action rule*

We must still address whether, in the absence of merger, the one-form-of-action rule bars the sold-out junior lienholder—NEI—from bringing its own action to recover the debt secured by the same property that was already subject to the senior lienholder's judicial foreclosure action.

In *Roseleaf, supra,* 59 Cal.2d at page 39, the California Supreme Court ruled that "[t]he 'one form of action' rule of section 726 does not apply to a sold-out junior lienor" since "[t]here is no reason to compel a junior lienor to go through foreclosure and sale when there is nothing left to sell."

But defendants contend that NEI's suit violates section 726 for the following reason: "Had County Savings Bank sought to recover on the notes

---

[7]Section 726, subdivision (b) provides in pertinent part: "The decree for the foreclosure of a mortgage or deed of trust secured by real property . . . shall declare the amount of the indebtedness . . . and . . . shall determine the personal liability of any defendant for the payment of the debt secured by the mortgage or deed of trust and shall name the defendants against whom a deficiency judgment may be ordered . . . . In the event that a deficiency is not waived or prohibited and it is decreed that any defendant is personally liable for the debt, then upon application of the plaintiff filed at any time within three months of the date of the foreclosure sale and after a hearing thereon at which the court shall take evidence and at which hearing either party may present evidence as to the fair value of the real property . . . sold as of the date of sale, the court shall render a money judgment against the defendant or defendants for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the real property . . . therein sold as of the date of sale. . . ."

secured by deeds of trust on the property, it could have filed only one form of action, and not multiple lawsuits against the same defendants. Its assignee, RTC, likewise, would have been entitled to file only *one form of action* against defendants. However, in this case, the RTC purported to split up its claim . . . and allowed State Street Bank to prosecute the action. . . . Defendants cannot now be compelled to defend another action with respect to the debt to County Savings Bank, secured by the same property." (Original italics.)

We disagree. The one-form-of-action rule has not been, and should not be, applied to require two different creditors who hold separate debts to join in a single action, even if the two debts were once held by a single creditor—at least in the absence of evidence of a scheme to circumvent the rule. No case cited by defendants requires two creditors holding distinct debts to share a single action.

Section 726, subdivision (a), provides that "[t]here can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property . . . ." (§ 726, subd. (a).)[8]

█ "As judicially construed, section 726 is both a 'security-first' and 'one-action' rule: It compels the secured creditor, in a single action, to exhaust his security judicially *before* he may obtain a monetary 'deficiency' judgment against the debtor."[9] (*O'Neil v. General Security Corp.* (1992) 4 Cal.App.4th 587, 597 [5 Cal.Rptr.2d 712]; *Wozab, supra,* 51 Cal.3d at p. 997; *Kirkpatrick v. Westamerica Bank* (1998) 65 Cal.App.4th 982, 986 [76 Cal.Rptr.2d 876].) In other words, "[a] secured creditor can bring only one lawsuit to enforce its security interest and collect its debt." (*Wozab, supra,* 51 Cal.3d at p. 997.) And a creditor who holds multiple security, including real property, for a single debt must include all of the security in a single action. (*Walker, supra,* 10 Cal.3d at p. 740; 1 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra,* § 4.8, p. 236.) But "when, without [the

---

[8]In full, section 726, subdivision (a), provides: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter. In the action the court may, by its judgment, direct the sale of the encumbered real property or estate for years therein (or so much of the real property or estate for years as may be necessary), and the application of the proceeds of the sale to the payment of the costs of court, the expenses of levy and sale, and the amount due plaintiff, including, where the mortgage provides for the payment of attorney's fees, the sum of attorney's fees as the court shall find reasonable, not exceeding the amount named in the mortgage."

[9]Because no court is involved, a nonjudicial foreclosure sale is not an "action" that would preclude recovery on the debt in a subsequent suit (although the antideficiency provisions of § 580d would). (*Walker, supra,* 10 Cal.3d at p. 736; *Birman v. Loeb* (1998) 64 Cal.App.4th 502, 509 [75 Cal.Rptr.2d 294]; see § 22 [defining "action"].)

secured creditor's] fault, the security has been lost, the policy of the law does not prohibit a personal action." (*Merced Bank v. Casaccia* (1894) 103 Cal. 641, 644 [37 P. 648].)

██ Here, because these two debts were once held by a single creditor and were secured by the same property, defendants seek to treat the two debts, now held by two creditors, as one debt that can only be recovered in a single action. But neither the language of section 726 nor its purpose requires two debts owed by the same borrower and secured by the same property to be treated as one, merely because they once were held by the same creditor.

First, by its terms, section 726 speaks of a single debt or mortgage. It allows "but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage." (§ 726, subd. (a).) It does not, by its plain language, prohibit separate actions to recover separate but *related* debts assigned to independent parties. Unless the separate debts are a subterfuge—an issue we need not address today—two debts held by different creditors but owed by the same party cannot be deemed a single debt, even if they are secured by the same property. If it were otherwise, section 726 would obligate two independent creditors to share and coordinate a single action to collect *separate debts secured by the same property*, simply because the two debts were once held by a single creditor. That would place the more patient creditor at the mercy of the more impatient one—which ironically would accelerate the collection of both debts, thereby undermining the debtor-oriented protection of section 726 and the antideficiency statutes. In sum, the language of section 726 does not support the result that defendants seek.

However, because a single debt is theoretically subject to infinite divisions, making the concept of "debt" in section 726 potentially ambiguous, we will also look at the statute's purpose. ██ After all, while we " 'may not rewrite [a] statute to conform to an assumed intention which does not appear from its language' " (*In re Hoddinott* (1996) 12 Cal.4th 992, 1002 [50 Cal.Rptr.2d 706, 911 P.2d 1381]), we should "select the construction [of a statute] that comports most closely with the apparent intent of the Legislature, to promote rather than defeat the statute's general purpose . . . ." (*People v. Carter* (1996) 48 Cal.App.4th 1536, 1539 [56 Cal.Rptr.2d 309].)

██ The purposes of section 726 are not furthered by treating two bona fide debts as one when they are held by independent creditors, simply because they were once held by a single creditor. After all, the purpose of limiting a secured creditor to only one lawsuit to enforce its security interest

and collect its debt is not upset where one suit per debt is permitted, as here—unless, of course, the two debts are a subterfuge for one. Moreover, section 726's purpose of compelling the exhaustion of all security before the entry of a deficiency judgment is not thwarted if an independent junior lienholder is permitted to bring an action after the senior lienholder has exhausted the security. In such an instance, the security has already been exhausted, and no purpose would be served in requiring the junior lienholder to go through a meaningless foreclosure procedure.

As mentioned, in *Roseleaf, supra,* 59 Cal.2d 35, which involved a sold-out junior lienholder whose security was rendered valueless by the senior lienors' nonjudicial foreclosure, the California Supreme Court ruled that "[t]he 'one form of action' rule of section 726 does not apply to a sold-out junior lienor" since "[t]here is no reason to compel a junior lienor to go through foreclosure and sale when there is nothing left to sell." (*Roseleaf,* at p. 39.) It also ruled that "[t]he fair-value limitations of sections 580a and 726 likewise do not apply to a junior lienor . . . whose security has been rendered valueless by a senior sale." (*Ibid.*) Focusing on the antideficiency laws, the state high court reasoned: "The position of a junior lienor whose security is lost through a senior sale is different from that of a selling senior lienor. A selling senior can make certain that the security brings an amount equal to his claim against the debtor or the fair market value, whichever is less, simply by bidding in for that amount. He need not invest any additional funds. The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with the junior lienor who, unlike the selling senior, might otherwise end up with nothing." (*Roseleaf, supra,* 59 Cal.2d at p. 41.) The state high court concluded: "The junior's right to recover should not be controlled by the whim of the senior, and there is no reason to extend the language of section 580d to reach that result." (59 Cal.2d at p. 44.)

Likewise, in this case, there is no reason to extend the language of section 726's one-form-of-action rule to bar NEI, a junior lienholder, from bringing an action to collect its debt after the senior lienholder (here, State Street) has foreclosed to collect a bona fide separate debt secured by the same property: There is no security left to exhaust; NEI is seeking to recover a distinct debt; and "[t]he junior's right to recover should not be controlled by the whim of the senior . . . ." (*Roseleaf, supra,* 59 Cal.2d at p. 44.)

Nor does the fact that NEI's predecessors-in-interest allowed State Street to foreclose require a different outcome. In *Bank of America v. Graves*

(1996) 51 Cal.App.4th 607 [59 Cal.Rptr.2d 288] (*Graves*), the bank, which held a second deed of trust on the Graveses' home, permitted the holder of the first deed of trust on the property to complete its nonjudicial foreclosure first. The Court of Appeal rejected the Graveses' claim that the bank's separate suit was barred by section 726. The Court of Appeal ruled: " '[T]he sold-out non-purchase-money junior is free to pursue any remedy on the note without regard to the one-form-of-action limitation ([Code Civ. Proc.] § 726), fair market value deficiency limitation ([Code Civ. Proc.] §§ 726, 580a), and nonjudicial sale deficiency prohibitions ([Code Civ. Proc.] § 580d).' " (*Graves, supra,* 51 Cal.App.4th at p. 613, quoting Hetland, Secured Real Estate Transactions (Cont.Ed.Bar 1974) § 9.29, p. 219.)

We acknowledge that our case is distinguishable from the foregoing cases because the debts here were not only secured by the same property but also were once held by a single creditor at the time of the default. We recognize that a single lender might structure a single debt into several promissory notes in order to preserve the right to bring multiple actions.

But that was not the case here because the two debts originated years apart (in 1986 and 1988).

Further, "there is authority for the proposition that a lender can hold two separate tiers of indebtedness secured by the same real property, and can foreclose serially" without violating section 726. (Sheneman, Cal. Foreclosure Law and Practice (1998) §§ 5.29, 6.05, pp. 5-58, 6-20 to 6-21, fn. omitted; *Stockton Sav. & Loan Soc. v. Harrold* (1900) 127 Cal. 612, 620 [60 P. 165] [dictum].) We need not determine whether that is the case, however, because even if section 726 would require that a single creditor bring a single action on two debts secured by the same property (thereby treating the two debts as one), the statute's plain language—which speaks in terms of an action for the recovery of "any debt"—cannot be stretched to bar different creditors, holding legitimately separate debts secured by the same property, from bringing separate actions.

We agree, of course, that a creditor is not entitled to evade the operation of section 726, such as when a creditor has voluntarily released its lien and rendered its debt unsecured. (*Merced Bank v. Casaccia, supra,* 103 Cal. at p. 644; see also *Savings Bank v. Central Market Co.* (1898) 122 Cal. 28, 35 [54 P. 273].) But we cannot conclude that section 726 was intended to undermine the assignment to independent parties of related but legitimately separate loans held by a single creditor and to prohibit those parties from collecting those loans in separate actions. First, our review has not disclosed any case where the California courts have treated related loans assigned to

different parties as if the originating creditor still held them. (Cf. 1 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 5.12, p. 293 ["No case provides guidance on the creditor's ability to eliminate the [section] 580d consequences of two . . . related loans by transferring one of the loans to a third party lender."].)

Second, we reject any invitation to fashion a rule that not only stretches the language of section 726 to treat two legitimate debts as one but also would have an adverse effect on transfers to the secondary market in mortgage loans. The secondary market is important—not just to lenders, but to borrowers—because it impacts the availability of loans. "The primary market in mortgages . . . relies heavily on the existence of a secondary mortgage market where the originating lenders can sell the credit instruments they have created." (4 Powell on Real Property (2000) Mortgages & Foreclosures, § 37.04[4], p. 37-31.) It provides, among other things, new sources of mortgage capital, moderation of the cycles of a downturn in the availability of capital, and a flow of capital from areas of the country with a surplus to areas with greater demand than available capital. (*Ibid.*)[10]

In the context of this case, a ready market (made up of institutions like NEI) for loans held by financial institutions taken over by the RTC or FDIC are important to the public. For instance, the Financial Institutions Reform, Recovery and Enforcement Act of 1989, which was enacted in response to the savings and loan crisis of the late 1980's, empowered the RTC to "take over such assets or such liabilities as [the RTC] determined to be appropriate." (12 U.S.C. § 1821(d)(2)(F)(i).) Courts have read this provision to mean the " 'RTC will determine which assets and liabilities of a failed thrift should be sold and transferred, and which it should keep' " to enhance its ability to wind up the affairs of insolvent institutions. (*Nashville Lodging Co. v. Resolution Trust Corp.* (D.C. Cir. 1995) 59 F.3d 236, 247, quoting *Payne v. Security Sav. & Loan Ass'n F.A.* (7th Cir. 1991) 924 F.2d 109, 111.) We see no reason to burden the sale or transfer of related loans once held by the same creditor and secured by the same properties with the fiction that they remain a single debt within the meaning of section 726, when neither the

---

[10]"The secondary mortgage market is 'a vehicle for linking the mortgage market with the broader capital market; secondary market transactions can involve two private lenders, a private lender and a government-sponsored secondary market agency . . . , or a private lender and a private conduit company.' [Citation.]" (*Guild Mortgage Co. v. Heller* (1987) 193 Cal.App.3d 1505, 1508, fn. 1 [239 Cal.Rptr. 59].) "The secondary mortgage market should not be confused with second mortgages or junior liens. . . . [T]he secondary market institutions purchase mortgages, including first and second mortgages, from the originating or primary lenders." (4 Powell on Real Property, *supra*, Mortgages & Foreclosures, § 37.05[2], p. 37-19.)

language nor the policy of section 726 requires such a construction *and* such a rule would adversely impact the sale and value of loan portfolios.

Defendants nonetheless argue that because NEI "is a successor in interest of County Savings Bank and of the RTC," NEI "takes the note and deed of trust subject to all defenses which defendants have against County Savings and RTC, which held *both* the first and second trust deeds on the property." (Original italics.)

We agree that an assignee acquires the rights and liabilities of the assignor and is subject to the defenses that could be asserted against the assignor. (See *Professional Collection Consultants v. Hanada* (1997) 53 Cal.App.4th 1016, 1018-1019 [62 Cal.Rptr.2d 182] ["assignee stands in the shoes of the assignor, acquiring all of its rights and liabilities"]; *Strike v. Trans-West Discount Corp., supra,* 92 Cal.App.3d at p. 744 ["[a] recorded assignment of note and deed of trust vests in the assignee all of the rights, interests of the beneficiary . . ."].)

But the restrictions arising from the one-form-of-action rule under section 726 cannot logically be triggered before the one action is commenced. And in this case, at the time the first judicial foreclosure action was commenced by State Street, there were two bona fide creditors holding the two debts. Thus, at the time that State Street brought and completed the judicial foreclosure action, the RTC (which held the second note) was under no disability concerning the right to bring a separate action under section 726 and it could assign (or its successor could assign) the loan free of any such restriction.[11]

In a somewhat different context, one court observed that "the limitation to the single action of foreclosure refers to the time the action is brought rather than when the trust deed was made . . . ." (*Graves, supra,* 51 Cal.App.4th at p. 611.) Thus, " 'where the security has been exhausted or rendered valueless through no fault of the mortgagee, or beneficiary under a trust deed, an action may be brought on the debt on the theory that the limitation to the

---

[11]We noted earlier that the RTC had also filed an action for judicial foreclosure on the second loan which was later dismissed (see fn. 2, *ante*), but defendants make no argument that NEI's subsequent action on this same debt was barred as a result of the one-form-of-action rule, and have therefore waived it. (*People v. Turner, supra,* 8 Cal.4th at p. 214, fn. 19.) In any event, the fact a creditor brings a prior foreclosure action, which is dismissed, has been held not to preclude under section 726 a later foreclosure and action for the deficiency. (*Griffin v. Compere* (1952) 114 Cal.App.2d 246, 247 [250 P.2d 1].) Only if "the conduct of the creditor in prosecuting an action . . . amounts to an election of a remedy other than foreclosure or if other conduct is analogous to such an election of a remedy" may "the sanction of loss of security . . . apply." (*Kirkpatrick v. Westamerica Bank, supra,* 65 Cal.App.4th 982, 990; 4 Miller & Starr, Cal. Real Estate, *supra,* § 10:162, p. 472.)

single action of foreclosure refers to the time the action is brought rather than when the trust deed was made, and that if the security is lost or has become valueless at the time the action is commenced, the debt is no longer secured.' " (*Ibid.*, quoting *Brown v. Jensen* (1953) 41 Cal.2d 193, 195 [259 P.2d 425].) We see no reason not to apply this theory to the circumstances here—that the restrictions of the one-form-of-action rule are triggered no earlier than the time the action is brought, and possibility later since the commencement of the action does not necessarily constitute an election of remedies. (See 4 Miller & Starr, Cal. Real Estate, supra, § 10:162, pp. 470-472.) And in this case, at the time of the judicial foreclosure action and the potential triggering of the one-form-of-action rule, separate creditors held the two debts, and thus NEI was free of any prior restrictions arising under the rule when it was assigned its loan.

Finally, defendants cite several cases which they contend support their position. They claim that *Simon, supra,* 4 Cal.App.4th 63, is "on all fours with the present case." But *Simon* only held that "where a creditor makes two successive loans secured by separate deeds of trust on the same real property and forecloses under its senior deed of trust's power of sale, thereby eliminating the security for its junior deed of trust, section 580d . . . bars recovery of any 'deficiency' balance due on the obligation the junior deed of trust secured." (4 Cal.App.4th at p. 66.) Thus, *Simon* is inapposite to our case—first because *Simon* deals with actions to collect debts owed to a *single* creditor secured by the same property; second, because *Simon* addresses the application of section 580d, not section 726, to that single creditor; and third, because *Simon* deals with a nonjudicial, not a judicial, foreclosure.

Inapposite as well are *Shin v. Superior Court* (1994) 26 Cal.App.4th 542, 552-554 [31 Cal.Rptr.2d 587], and *Pacific Valley Bank v. Schwenke* (1987) 189 Cal.App.3d 134, 141-146 [234 Cal.Rptr. 298], on which defendants also rely. In each case, there was only one note, albeit one signed by more than one borrower; the comaker of the note was deemed entitled to the protection of the one-form-of-action rule. (*Shin, supra,* 26 Cal.App.4th at pp. 544, 552-554; *Schwenke, supra,* 189 Cal.App.3d at pp. 137, 146.) As the court in *Shin* put it, "If a secured creditor lends to multiple borrowers on one loan secured by California real estate, it is limited to the collection procedure prescribed by section 726. It cannot file and pursue actions against some of the borrowers and not others without risking the loss of the security." (*Shin, supra,* 26 Cal.App.4th at pp. 553-554.)

Accordingly, because neither section 726 nor the antideficiency laws prohibit a sold-out junior creditor, like NEI, from bringing a separate action

to recover a debt formerly secured by property n which a senior lienholder has foreclosed (see *Roseleaf, supra,* 59 Cal.2d 35), and because neither the language nor purpose of section 726 bars such an action simply because the two legitimately distinct debts were once held by a single creditor, we conclude that NEI is entitled to recover the amount due under the second note.

C.-E.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## III. DISPOSITION

The judgment is reversed. On remand, the trial court is directed to enter judgment for NEI against defendants Woods, Laird, and Mitchell; to award damages in the principal amount due under the note; and to determine and award the interest, attorney fees, and costs owed by such defendants. NEI is awarded its costs on appeal. (Cal. Rules of Court, rule 26(a).)

Davis, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 17, 2002.

---

*See footnote, *ante*, page 1217.