Filed 1/22/24  Rinard v. Positive Investments CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RICHARD JOHN RINARD et al., | D081546 |
| Plaintiffs and Appellants, | |
| v. | |
| POSITIVE INVESTMENTS, INC., | (Super. Ct. No. CIVDS1714581) |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Bryan F. Foster, Judge.  Affirmed.

Gotfredson & Associates, E. Jay Gotfredson and Everett J. Gotfredson for Plaintiffs and Appellants.

Levinson Arshonsky Kurtz & Komsky, Richard I. Arshonsky and Lori E. Eropkin for Defendant and Respondent.

Appellants Richard John Rinard, William Kersten, and Peter George, through his representative, Janice George, filed a complaint against Respondent Positive Investments, Inc. (Positive) alleging wrongful foreclosure and seeking to set aside the trustee's sale of Rinard's real property located at 1812-1816 West Foothill Boulevard, Upland, California

91786 (the Foothill Property). The trial court found the foreclosure proper and issued judgment in favor of Positive.

Rinard executed two promissory notes for sums loaned by Positive, and the central issue on appeal is whether the second note was secured by Positive's deed of trust on the Foothill Property (the Foothill Deed of Trust). The Foothill Deed of Trust explicitly provides that the first note is secured by the Foothill Property and contains a "dragnet" provision securing future advances from Positive to Rinard when a subsequent note "recit[es] it is so secured."

After years of default with a complex procedural history recounted in detail below, Positive foreclosed on the Foothill Deed of Trust based on the amount due under both notes. Appellants filed this action on the basis that the second note was not secured by the Foothill Deed of Trust. Positive responded that the second note fell within the scope of the Foothill Deed of Trust dragnet clause and additionally presented multiple affirmative defenses.

The trial court held a bench trial and issued a statement of decision concluding: (1) Positive's foreclosure of the Foothill Property was not wrongful because the second note was secured under the Foothill Deed of Trust, Rinard failed to provide valid tender, and the foreclosure did not cause Rinard harm; (2) Rinard had released any claim that the second note was not so secured in a prior settlement agreement; (3) Rinard was equitably estopped from claiming the second note was not so secured based on representations made during his bankruptcy proceeding; and (4) Kersten and George, who at some time held judgment liens against Rinard's property, did not have standing to challenge the foreclosure.

2

The legality element of wrongful foreclosure turns on the interpretation of the loan documents. The trial court provisionally considered extrinsic evidence and determined that ambiguity existed as to whether the second note fell within the scope of the Foothill Deed of Trust dragnet provision. Considering the extrinsic evidence to aid in interpretation of these documents, the court determined that the parties mutually intended the second note to be secured by the Foothill Property.

We independently conclude that the loan documents were reasonably susceptible to either the interpretation that the dragnet provision of the Foothill Deed of Trust applied to the second note or to the interpretation that the dragnet provision did not apply. Given this ambiguity, the trial court properly admitted the extrinsic evidence to aid in interpretation of the documents. We conclude substantial evidence supports the trial court's reasonable interpretation that the second note was secured under the Foothill Deed of Trust. Because Positive properly foreclosed using the amounts in default under both notes, we affirm the judgment and do not reach the remaining issues raised on appeal.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Rinard obtained title to the Foothill Property from his brother. Rinard owned and operated a restaurant and bar, the Buffalo Inn, on the property.

In 2006, Rinard, his brother, and the Buffalo Inn were involved in a civil suit by Stephanie Gonzalez for sexual harassment and unpaid wages. Rinard required funding for the defense in that litigation, as well as to rectify code enforcement issues on the property.

A. *The Loan Transactions*

In August 2006, Rinard approached Positive requesting a "line of credit-type" loan using the Foothill Property as security. Positive's president, Rao Yalamanchili, agreed to lend Rinard $875,000, and Rinard executed a note in that amount, loan escrow instructions, and a deed of trust with the Foothill Property as security for the full amount. However, Positive did not immediately advance any funds nor did it record that deed of trust.

Rather, on September 15, 2006, Positive agreed to lend $455,000 to Rinard, as evidenced by a Note Secured by Deed of Trust (Note 1). Positive advanced the $455,000 to Rinard in four disbursements starting on October 2, 2006. Because Positive initially lent less than the $875,000 previously discussed, it still did not record the previously executed deed of trust securing that total sum.

Instead, on December 19, 2006, Positive recorded the Foothill Deed of Trust on a standard Short Form Deed of Trust and Assignment of Rents, executed by Rinard, providing that the Foothill Property would serve as security for the $455,000 sum advanced. The Foothill Deed of Trust also stated that the Foothill Property would serve as security for the " '[p]ayment of such further sums as the then record owner of said property may borrow from Beneficiary when evidenced by another note (or notes) reciting it is so secured.' "

The following month, Rinard approached Positive to obtain additional funding to post an appeal bond in the Gonzalez litigation, resulting in three additional agreements. Positive agreed to lend Rinard an additional $350,000 in a second Note Secured by Deed of Trust (Note 2), executed by Rinard on January 8, 2007. Note 2, as a standard form, did not specify any deed of trust or property. The following day, the parties entered into a Bond

4

Collateral Agreement, explaining that the $350,000 sum would serve as collateral for a $350,000 appeal bond in the Gonzalez litigation. In this agreement, Rinard also represented that the appeal had merit, agreed to indemnify Positive for damages cause by breach of this representation, and authorized Positive to communicate with his attorney regarding the appeal. The Bond Collateral Agreement further provides, "This Agreement shall be secured by the real property owned by Richard Rinard individually, located at 6737 East Ave., Rancho Cucamonga, California 91737" (the East Property). Lastly, Rinard executed a Deed of Trust providing that the East Property secures payment of the $350,000 advance, which was recorded on January 11, 2007.

In November 2008, Positive made a $162,664.63 payment on defaulted Foothill Property taxes to avoid a tax sale of the property.

B. *Other Liens on the Foothill Property*

On September 11, 2006, prior to the recording of the Foothill Deed of Trust, Gonzalez filed an abstract of judgment based on a $1.3 million judgment the court entered against Rinard, Rinard's brother, and the Buffalo Inn. Gonzalez's claim was later reduced significantly.

After the Foothill Deed of Trust was recorded, in September 2008, appellant Peter George recorded an abstract of judgment against Rinard in the amount of $63,740.16. In December 2008, Kersten recorded an abstract of judgment against Rinard and Buffalo Inn in the amount of $48,684.64.

C. *Rinard's Bankruptcy*

On December 13, 2010, Positive recorded a Notice of Default and Election to Sell the Foothill Property, noting a default under Note 1. Two days later, Rinard filed a chapter 7 bankruptcy petition.

5

During the bankruptcy, on April 14, 2011, Positive recorded a Notice of Trustee's Sale of the Foothill Property. In response, Rinard and the chapter 7 trustee filed an adversary complaint for declaratory relief establishing that the automatic stay had not terminated as to the bankruptcy estate, for damages caused by a violation of the stay, for declaratory relief providing that the notice of default was invalid, and for injunctive relief prohibiting the foreclosure. The bankruptcy court held that the automatic stay had not terminated as to property of the estate,[1] and Rinard and the chapter 7 trustee were entitled to a preliminary injunction. (*Rinard v. Positive Invs., Inc. (In re Rinard)* (Bankr. C.D.Cal 2011) 451 B.R. 12, 21 (*Rinard*).)

In August 2011, the bankruptcy court granted Rinard's motion to convert his bankruptcy proceeding to a chapter 11 reorganization proceeding.

Subsequently, in November 2011, Rinard and Positive settled the adversary proceeding through a Settlement Agreement and Release (Settlement Agreement) and a Stipulation for Adequate Protection and Forbearance from Filing Motion for Relief from Automatic Stay (Adequate Protection Stipulation). In essence, the parties agreed that Rinard would make monthly adequate protection payments of $4,550 to Positive, and Positive would not move for relief from stay unless Rinard defaulted on those

---

[1] Rinard had filed a previous bankruptcy petition in November of 2010 that was dismissed for failure to timely file schedules. Under 11 U.S.C. section 362, subdivision (c)(3)(A), if a debtor has filed a bankruptcy petition within the past year, the automatic stay "terminate[s] with respect to the debtor on the 30th day" of the subsequently filed case. There is a split in authority as to whether the stay terminates only as to the debtor or as to the debtor and the bankruptcy estate, with the majority of courts concluding the stay only terminates as to the debtor and the debtor's property, but not as to the estate. (*Rinard, supra*, 451 B.R. at p. 17.)

payments.  The Settlement Agreement also contained a mutual release of claims that could have been asserted in the adversary proceeding.

Both documents contain Recitals, which were "acknowledged by the Parties to be material representations by the parties forming the basis of this agreement."  One such recital provides that Note 1 and Note 2 were secured by the Foothill Deed of Trust.

In the Adequate Protection Stipulation, which was submitted by Rinard's attorneys, Rinard specifically acknowledged:  (1) "the Pre-Petition Loan Agreements [defined to include Note 1 and Note 2] are valid, enforceable, allowable, and unavoidable," and (2) "the Foothill Deed of Trust on the Foothill Parcels is valid, unavoidable, perfected, and secures the Pre-Petition Note Obligations."

The bankruptcy court granted approval of the Adequate Protection Stipulation in March 2012.  The court's order stated:  "Should any event of default occur, Rinard shall reimburse Positive Investments per the terms of the subject notes for the actual costs incurred by Positive Investments up to a maximum of $5,000 for the total cost of a single new appraisal of the Foothill Parcels, which sum shall be added to the amounts due under Notes 1 and 2 pursuant to the terms of such notes."

After the bankruptcy court approved the Adequate Protection Stipulation, Rinard's attorneys sought approval of the Settlement Agreement in a motion for approval of compromise supported by a declaration by Rinard. The motion and Rinard's declaration stated:  (1) Rinard borrowed "the principal sum of Eight Hundred Five Thousand Dollars ($805,000.00)" from Positive; (2) that sum consisted of the $455,000 Note 1 loan and the $350,000 Note 2 loan; and (3) Note 1 and Note 2 were secured by the Deed of Trust

7

executed on September 15, 2006." The court granted the motion and dismissed the adversary proceeding in May 2012.

In December 2012, the bankruptcy court approved Rinard's chapter 11 plan. The plan provided for refinance or sale of Rinard's property within 24 months of the effective date of the plan. The plan required Rinard to pay to Positive the $4,550 adequate protection payment as well as an additional $5,450 in consideration for Rinard's use of cash collateral. The plan listed Positive's claim as having a single $805,000 principal amount, plus interest, secured in part by the Foothill Property and in part by the East Property, in the second position as to both.[2] George's and Kersten's claims were included in the plan as general unsecured claims. The court's order approving the plan provides that all prior orders would remain in effect notwithstanding conversion of the case to a chapter 7 proceeding.

In February 2014, Rinard defaulted on plan payments, resulting in Positive filing a Motion for Relief from the Automatic Stay in June. Rinard opposed the motion on the basis that the secured claims on the Foothill Property were adequately protected by an equity cushion and that the Foothill Property was under contract to be sold for $3.6 million. Rinard's opposition stated: "The Foothill Parcels are subject to several secured claims," including a "lie[n] exist[ing] against the properties" in favor of Positive for $1,690,448.05, an amount which included defaults under both Note 1 and Note 2. Rinard filed a motion for an order approving the sale of the Foothill Property, proposing to pay Positive that full secured claim amount out of the proceeds of the sale. The bankruptcy court denied the

---

[2]    This representation may have been incorrect as to the East Property, as given a mortgage on the property and Gonzalez's lien.

motion for relief from stay and granted the motion to sell the property, but the sale did not close.

In November 2014, Rinard again attempted to sell the Foothill Property, this time with the East Property; he again brought a motion for approval of the sale proposing to pay Positive $1,690,448.05 out of the proceeds of the sale. Rinard obtained lien releases from George and Kersten in furtherance of the sale; still, this sale also failed. Kersten later testified that his lien release was conditional upon the completed sale of the Foothill Property and payment out of the proceeds.

In March 2015, after Rinard failed to file required reports and pay required fees, the United States Trustee moved to dismiss or convert Rinard's bankruptcy proceeding. The bankruptcy court granted the motion, converting Rinard's proceeding back to chapter 7.

In September 2016, the chapter 7 trustee, Positive, and Gonzalez entered into a Stipulation re Release of Liens to allow the for sale of the East Property. In that stipulation: (1) Positive released its lien against the East Property, (2) Gonzalez released her liens against the Foothill Property and accepted $460,000 from the proceeds of the East Property sale; and (3) the trustee abandoned the bankruptcy estate's interest in the Foothill Property. The bankruptcy court granted the trustee's motion to approve the stipulation without objection from Rinard, George, or Kersten.

D. *Notice of Default and First Civil Action*

On December 12, 2016, Positive recorded a Notice of Default and Election to Sell Under Deed of Trust relating to the Foothill Deed of Trust, providing a default amount of $2,009,456.30 under Note 1 and Note 2. On March 15, 2017, Positive recorded a Notice of Trustee's Sale scheduling the foreclosure sale of the Foothill Property.

9

In April 2017, Grand Pacific Communities Corporation, a housing developer, entered into an agreement with Rinard to purchase the Foothill Property for $3.5 million, later reduced to $3 million.

On May 11, 2017, the day before the scheduled foreclosure sale, Rinard recorded a quitclaim deed attempting to transfer title to the Foothill Property to his girlfriend. Also that day, she filed a chapter 13 bankruptcy proceeding, and Positive moved for relief from the automatic stay. The parties entered into a stipulation resolving the motion, which permitted Positive to foreclose after July 29, 2017. The bankruptcy court issued an order granting Positive relief from stay under the terms of the stipulation. As part of the order, the court concluded that the filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors after the transfer of the interest in the Foothill Property.

On June 6, 2017, Rinard filed a civil suit against Positive for declaratory and injunctive relief on the basis that Note 2 was not secured by the Foothill Property.

In the meantime, the sale of the Foothill Property to Grand Pacific remained pending as Grand Pacific conducted due diligence related to zoning restrictions in the City of Upland that prevented the type of project it sought to complete. On July 18, 2017, a Grand Pacific representative wrote an email inquiring whether the City of Upland would consider granting a conditional use permit because the developer "couldn't make it work" under existing guidelines. The Grand Pacific representative wrote he needed to know if the city would consider granting the permit "as soon as possible" because he "only ha[s] until the end of the week before [he] ha[s] to pull the plug" due to the scheduled foreclosure sale.

On July 26, 2017, Rinard noticed an ex parte application in the civil suit for a temporary restraining order to enjoin the foreclosure sale scheduled for July 31. Positive removed the action to bankruptcy court. The removal permitted Positive to move forward with the foreclosure sale, at which it acquired the Foothill Property for a credit bid of $967,644.63, consisting of the principal amounts on both notes plus the amount of taxes advanced. To prevent a tax sale scheduled for August 2, 2017, Positive paid defaulted real property taxes of $356,525.64.

On August 23, 2017, the bankruptcy court remanded Rinard's suit to state court as the appropriate court to resolve the state law claims, but also suggested Rinard's action was frivolous.

Positive later obtained possession of the Foothill Property after filing an unlawful detainer action against Rinard.

In June 2018, Rinard received a bankruptcy discharge.

E. *The Present Action*

Following the foreclosure sale, Rinard, Kersten, and George filed this suit against Positive[3] alleging causes of action for wrongful foreclosure and to set aside the trustee's sale of the Foothill Property. Positive answered and filed an amended cross-complaint for declaratory relief establishing that the Foothill Property secures both Notes 1 and 2 under the Foothill Deed of Trust.

1. *Trial*

The court held a bench trial. At trial, Rinard and Yalamanchili, testified.

---

[3]     Fidelity National Title Company, a California Corporation, was also a defendant, but the court later entered summary judgment in favor of Fidelity.

### a. *Yalamanchili's Testimony*

Yalamanchili testified that the amounts loaned to Rinard were a single debt. According to Yalamanchili, throughout their dealings, he and Rinard repeatedly discussed that both notes were secured by the Foothill Deed of Trust.

At the time Positive advanced the Note 2 sum, Yalamanchili stated to Rinard that he was "advancing an additional $350,000 to you on the Foothill property and I'm taking additional security." Yalamanchili discussed with Rinard that this second advance was part of the original $875,000 amount Yalamanchili had agreed to lend Rinard.

Despite the mutual intent that the Foothill Property secure Note 2, Yalamanchili requested additional security for the second advance because of a cloud on the title of the Foothill Property. Although Rinard provided assurance that the Foothill Property had sufficient equity to cover the total amount Positive under both notes, he agreed to provide additional security using the East Property.

When the senior lienholder on the East Property issued a notice of default, Rinard again assured Yalamanchili that Positive's loan was covered by the Foothill Property. Yalamanchili yet again received assurance that the Foothill Property secured both notes when he paid the $162,664.63 in default property taxes on that property.

### b. *Rinard's Testimony*

During his testimony, Rinard denied ever seeking an $875,000 loan from Positive.

Instead, Rinard stated that the initial $455,000 loan was secured by the Foothill Property. He did not recall his discussion with Yalamanchili when they executed the paperwork for the $350,000 loan. Nonetheless, he

12

denied that he ever intended the Foothill Property to serve as security for Note 2, that he ever stated otherwise, and that Yalamanchili expressed to Rinard any expectation that it would.

Rinard additionally testified that no one told him that the bankruptcy documents stated that Note 2 was secured by the Foothill Property, and he would have clarified otherwise had anyone done so. He stated that he did not intend to sign any documents stating that Note 2 was secured by the Foothill Property. He explains that he is severely dyslexic such that he cannot read or write.

2. *Statement of Decision*

The trial court ruled in favor of Positive in a Tentative Statement of Decision, which it later adopted as the Final Statement of Decision.

The court first concluded that Rinard had failed to establish all three elements of wrongful foreclosure: the foreclosure sale was not illegal, fraudulent, or oppressive; Rinard failed to provide a valid tender; and Rinard failed to show causation or harm.

As to legality, the court determined that ambiguity exists in Note 2 because it is entitled Note Secured by Deed of Trust but does not specify which deed or deeds of trust, or which property or properties, serve as the security. Because of this ambiguity, the court considered extrinsic evidence to determine the "actual expectations of the parties" as to the dragnet clause rather than the literal wording of the standard contract provision under *Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1445–1446 (*Fischer*).

Based on the extrinsic evidence, the court found that the parties intended that the dragnet clause in the Foothill Deed of Trust secure the loan advances evidenced by Note 2 because: (1) Rinard used the Note 2 funds, like

13

the Note 1 funds, for the Buffalo Inn litigation; (2) Rinard initially sought to borrow $875,000 and authorized a deed of trust against the Foothill Property in that amount; (3) Rinard's statements and conduct during his bankruptcy proceeding demonstrated he had the expectation that the Foothill Property secured Note 2; and (4) Yalamanchili's testimony that the parties intended the Foothill Property to secure Note 2 was credible, and Rinard's contrary testimony was not credible. The court found that Yalamanchili credibly testified: that Rinard confirmed that the Foothill Deed of Trust would serve as security each time Positive advanced funds; that Rinard assured Yalamanchili that the Foothill Property had sufficient equity to cover both Notes 1 and 2; that Yalamanchili would not have advanced $162,664.63 to pay defaulted property taxes on the Foothill property to protect a $455,000 loan, rather than an $805,000 loan; and that Yalamanchili would not have released Positive's lien on the East Property but for the Foothill Property securing Note 2.

Further, the court determined that the Bond Collateral Agreement did not void or supersede Note 2 by its terms or purpose. Rather, the Bond Collateral Agreement served different purposes, containing Rinard's representation that the appeal had merit, requiring Rinard to pay the annual bond fee, and permitting Positive to communicate with Rinard's attorney regarding the appeal.

As to the second element of wrongful foreclosure, the trial court determined that Rinard's tender was insufficient because it was conditional on a pending sale of the Foothill Property still in the due diligence phase and because it was not a tender of the full amount owed. Nor, the trial court held, did Rinard establish the third element, causation of harm, because Grand Pacific terminated the sale due to the condition of the property, the

14

foreclosure would have occurred regardless based on the default under Note 1, and the property would have been sold days later at the August 5, 2017, scheduled tax sale.

Additionally, the trial court concluded that the general release in the Settlement Agreement applied to Rinard's claim that the Foothill Deed of Trust did not secure Note 2. And because Positive relinquished its interest in the East Property to its detriment in reliance on Rinard's assertions that Note 2 was secured by the Foothill Property, the court explained, equitable estoppel bars Rinard from arguing that Note 2 was not so secured.

Finally, the trial court found that George and Kersten had no standing to challenge the foreclosure as creditors included in the chapter 11 plan as unsecured or as holders of an involuntary junior lien under *Monolith Portland Cement Co. v. Tendler* (1962) 206 Cal.App.2d 800.

## II.

## DISCUSSION

The overarching issue before us is whether the trial court erred by concluding that the Foothill Deed of Trust secured both Note 1 and Note 2 and therefore no wrongful foreclosure occurred. "The elements of a wrongful foreclosure cause of action are: ' "(1) [T]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." ' " (*Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 561–562.)

The legality of the foreclosure turns on the interpretation of Note 2 and the dragnet clause in the Foothill Deed of Trust. Rinard argues the foreclosure sale of the Foothill Property was unlawful because Note 2 was not secured by the property under the unambiguous language of the dragnet clause in the Foothill Deed of Trust. Positive responds: (1) the language of Note 2 is ambiguous as to which deed of trust it refers, and (2) substantial evidence supports the court's reasonable interpretation that the parties intended the dragnet provision of the Foothill Deed of Trust to apply to Note 2.

We conclude the trial court did not err by finding the sale of the Foothill Property lawful. Because we conclude the sale was lawful, we need not consider the remaining arguments.

A. *Ambiguity*

As a matter of general contract interpretation, "[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) When examining dragnet clauses in particular, "California courts have consistently adhered to a construction of such clauses that depends more on 'the actual expectations of the parties . . . than the literal wording of the boilerplate clause.' " (*Fischer*, *supra*, 109 Cal.App.4th at p. 1445.)

" 'The decision whether to admit parol [or extrinsic] evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine "ambiguity," i.e., whether the language is "reasonably susceptible" to the interpretation urged by a party. If in light of the extrinsic evidence the

16

court decides the language is "reasonably susceptible" to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step-interpreting the contract.  [Citation.]' " (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1267 (*ASP Properties*).)  "A party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean." (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393 (*City of Hope National Medical Center*).)

In the first step, we independently review the trial court's determination of ambiguity.  ( *City of Hope National Medical Center*, *supra*, 43 Cal.4th at p. 393.)

Taking into account the *Fischer* actual expectations "general rule" and the evidence regarding the parties' intentions, we conclude that the documents here are ambiguous as to whether Note 2 is secured by the Foothill Deed of Trust through the dragnet clause. (*Fischer*, *supra*, 109 Cal.App.4th at pp. 1448–1449.)  Note 2 recites that it is "Secured by Deed of Trust."  Considering evidence of the parties' intentions and actual expectations, Note 2 is reasonably susceptible to the interpretation that this recitation refers to the Foothill Deed of Trust.

Evidence supporting this interpretation includes Rinard's execution of the initial $875,000 note entirely secured by the Foothill Property, his use of the funds from Note 2 for purposes related to the Foothill Property, and his documents during bankruptcy, including his own declaration and documents submitted by his attorneys, stating the Foothill Property secures Note 2. While the bankruptcy documents may not amend the original agreements, they serve as evidence of Rinard's understanding and intent as to the agreements.  Yalamanchili testified at length as to Positive's intent that the

17

Foothill Deed of Trust apply to Note 2, as well as discussions with and assurances by Rinard of that mutual intent.

Because of this latent ambiguity, the trial court properly admitted extrinsic evidence to aid in the interpretation of the documents.

B. *Construction*

In step two, we review "the ultimate construction placed upon the ambiguous language" using the extrinsic evidence. (*ASP Properties*, *supra*, 133 Cal.App.4th at pp. 1267–1268.) " 'When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction [following a trial] will be upheld if it is supported by substantial evidence.' " (*Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8.) "Under the substantial evidence standard of review, 'we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment. . . .' To be substantial, the evidence must be of ponderable legal significance, reasonable in nature, credible, and of solid value." (*ASP Properties*, at p. 1266.)

Here, the trial court faced conflicting extrinsic evidence as to whether Note 2 was secured by the Foothill Deed of Trust. We conclude substantial evidence exists to support the trial court's interpretation that the dragnet clause applied to Note 2.

Although "[a] trust deed containing a dragnet clause that is printed on a standard bank form is considered a contract of adhesion" that "cannot be

enforced if it does not fall within the reasonable expectations of the weaker or 'adhering' party," the substantial evidence demonstrates that the trial court's interpretation that Note 2 was secured by the Foothill Property fell precisely within Rinard's actual expectations. (*Fischer*, *supra*, 109 Cal.App.4th at pp. 1445–1446.) Extensive evidence supports the conclusion that Rinard's actual expectation was that the Foothill Deed of Trust secured Note 2.

First, Rinard sought a "line of credit type" loan from Positive and initially executed a promissory note in the amount of $875,000, more than the principal amounts of Note 1 and Note 2, fully secured by the Foothill Property.

Second, the trial court determined Yalamanchili's testimony was credible, and Rinard's conflicting testimony was not credible, determinations we must accept. Yalamanchili testified: he discussed with Rinard at the time Positive made the $350,000 loan that Note 2 secured by the Foothill Property; Rinard assured Yalamanchili at that time that the Foothill Property had sufficient equity to cover the Note 2 amount; the parties discussed that the East Property would serve as security for Note 2 in addition to the Foothill Property; and Rinard again assured Yalamanchili that the Foothill Property secured both Notes 1 and 2 at the time he agreed to pay default property taxes on $162,664.63.

Third, during his bankruptcy, Rinard repeatedly filed documents demonstrating he held the understanding that the Foothill Deed of Trust secured Note 2. The documents settling the adversary proceeding recited, as material representations forming the basis of the agreements, that the Foothill Property secured Note 2 in addition to Note 1. Rinard submitted the Motion for Approval of Compromise and a supporting declaration stating that Note 1 and Note 2 were secured by the Foothill Deed of Trust. Rinard's

19

bankruptcy plan showed Positive's claim as having a single $805,000 principal amount, and he made a single payment to Positive. When he proposed to sell the Foothill Property, Rinard again stated that the full amount owed to Positive under Note 1 and Note 2 was secured by the Foothill Property. Twice, he sought approval of sales, proposing to pay the full amount due under both notes out of the proceeds of the sale.

Fourth, Rinard used the funds he obtained through Note 2, like those in Note 1, for the litigation related to the Foothill Property. The funds advanced in Note 1 and the funds advanced in Note 2 are connected because they were used for the litigation involving the Foothill Property. (See *Wong v. Beneficial Sav. & Loan Asso.* (1976) 56 Cal.App.3d 286, 295 ["If the first loan is made to enable the borrower to erect improvements on his real estate and the purpose of the second loan is only to finance more improvements on the same real estate, it is not hard to tie the two loans together under one deed of trust."].)

The relationship between the two loans is significant despite the *Fischer* court's determination otherwise under the facts of that case. There, both loans existed prior to the deed of trust, which expressly referred to only one of the two loans. (*Fischer*, *supra*, 109 Cal.App.4th at p. 1447.) The borrowers also provided evidence that the lender had assured them that only the loan referenced was secured under the deed of trust. (*Id*. at p. 1440.) Moreover, the determination in *Fischer* was merely that ambiguity existed such that there was a triable issue of fact.

Here, unlike in *Fischer*, the other evidence supports the connection between the notes. The credible evidence at trial was that Rinard, the borrower, assured Positive, the lender, that the deed of trust secured both notes. This credible evidence was supported by documentary evidence. And,

20

unlike in *Fischer*, Note 2 was not in existence prior to the Foothill Deed of Trust and could not have been expected to be included in it. Although the fact that Note 2 was secured by another deed of trust was potentially contrary evidence, contrary evidence does not negate the substantial evidence supporting the trial court's decision.

Rinard's other cited cases involving dragnet provisions do not require a different result. In *Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1421, the court examined the parties' intent even though the dragnet provision did not reference the note, concluding that the dragnet clause indeed did not apply because "the record makes clear that the parties intended that the later note for $110,000 was to be secured by the 1988 trust deed." In *Nat'l Enters. Inc. v. Woods* (2001) 94 Cal.App.4th 1217, 1228, not only did the second note fail to reference the first deed of trust as required by the dragnet clause, but ". . . the second note expressly identified the second deed of trust as the applicable security instrument," a fact not present in our case.

In sum, the course of conduct throughout the parties' dealings provides substantial evidence for the trial court's reasonable interpretation that Positive and Rinard mutually intended Note 2 to be secured by the Foothill Deed of Trust.

DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.